H. E. BUTNER (EMPLOYEE), RESPONDENT, v. L. W. HAYES CONSTRUCTION COMPANY (EMPLOYER), AND THE FIDELITY AND CASUALTY COMPANY OF NEW YORK (INSURER), APPELLANTS.—60 S. W. (2d) 680.

St. Louis Court of Appeals. Opinion filed May 31, 1933.

George A. Hodgman and Albert E. Cunliff for appellants.

1074

*Roy Hamlin, Walter Juett, William Miller* and *Ben Ely* for respondent.

KANE, J.—This is an appeal from the judgment of the Circuit Court of Montgomery County, Missouri, affirming an award made by Workmen's Compensation Commission. The claim was filed by H. E. Butner on the 11th day of April, 1932, who was injured·on the 5th day of December, 1931, while in the employ of the L. W. Hayes Construction Company. The Commission awarded the sum of $12.34 per week for 400 weeks and in due course the case has reached this court on joint appeal of the employer and its insurer, The Fidelity & Casualty Company of New York.

The evidence tends to disclose that the L. W. Hayes Construction Company was graveling Highway No. 19 for some distance from Big Springs to Highway No. 40; that claimant along with others was employed by the construction company to haul gravel for said highway, the rate of pay to be forty-five cents a yard. There were no regular hours of work, claimant being subject to the call of his employer when weather and road conditions would permit. Claimant moved his family to Big Springs, where they lived in a rented house.

Claimant further testified as follows:

"Q. So from the 26th of November to and including the 5th day of December the ground had been wet there and you had been unable to do any hauling; is that correct? A. Yes, sir.

"Q. What happened then on the morning of the 5th day of December, 1931, prior to the injury? A. Well, I was sitting on the front porch and this timekeeper, Edwards, came down the road and he wanted to know if I had been out on the road to see if I could get over the road and I told him no and he said that they were going to work that afternoon but that I had better go up on the road and see if we could get over the road.

"Q. He said you had better go look at the road and see if you can get over it? A. Yes, sir.

"Q. Go ahead. A. I went on up to town and went up to the garage—he went on up to town and to the store or somewhere, and so I went on up in a few minutes and went to Mr. Saak's garage and Claude Howel was in there and—I can't recall the other guy's name —he had some International Trucks—

"Q. Never mind about the details— A. So I told Claude, 'Let's put some water in the truck and go up on the road and see if we could get over the road.' So we started to do that and we met met Glazier and—

"Q. Who was Mr. Glazier? A. Another truck driver that was working for L. W. Hayes hauling gravel. So he had his truck there in front and he said he would go with us and we would go in his truck. So we got on his truck and went on his truck.

"Q. On this detour road— (Withdraw that.) To get to the dirt road would you have to go over the detour road? A. Not at that time.

"Q. You would take the regular No. 19 to the project? A. Yes, sir.

"Q. All right. Were there some gates that had been erected across No. 19 to keep the public from using it? A. Yes, sir.

"Q. Would they have to be opened and shut to get on the road there? A. Yes, sir.

"Q. Had you prior to this date either been instructed by Mr. English or Mr. Edwards or any agent or representative of the Hayes Construction Company about closing and shutting those gates when you went through there? A. No, sir.

"Q. Did they give you any instructions about those gates should be closed or anything? A. No, sir, I don't know anything about that; I don't know who attended the gate.

"Q. I am not asking who attended the gate but I am asking if the Hayes Construction Company told you and the other men on this project that when you went through those gates you were to shut them? A. We opened and shut them when we did go through them.

"Q. On this particular morning on December 5, 1931, this Mr. Edwards was still the timekeeper for the Hayes Construction Company? A. Yes, sir.

"Q. What time was it when he came to your house? A. I judge a little after—around eleven o'clock, might have been a little later."

.    .    .    .    .    .

"Q. On this particular morning of December 5, 1931, after he went to your house and wanted you to go up and look at the road to see if it was dry enough— A. Yes, sir.

"Q. —did you do that? A. Yes, sir.

"Q. Tell the Commissioner what happened that morning while you were doing that? A. We got on Mr. Glazier's truck and Claude Howel got in with him on the cab and this other man got on the left-hand fender and I started to get on the other and it was all broken loose and did not look like it would hold a man up so I sat down on the bumper and held to the tie rods that hold the lights on and they hit a rough place and threw me off.

"Q. What happened, did it run over you when it threw you off? A. Ran up on me; yes, had me under the truck. I could not say then what happened, because I was hurting and paining so bad.

"Q. Now, Mr. Butner, prior to the 5th day of December, 1931, had the men there on that project, when they would go out on the road, had they been in the habit of riding the fenders and opening the gates and so forth? A. Yes, sir.

"Q. Had Mr. English and Mr. Edwards been there and seen that conduct? A. Yes, sir.

"Q. Was that the usual practice on that project? A. Yes, sir.

"Q. How big a truck was this that rolled you over and ran on you on that occasion? A. One ton and a half Chevrolet truck.

"Q. Did it go completely over you? A. No, sir, over me with the bumper and up to the axle."

Counsel for appellants admit that on the point of whether or not respondent was directed by the proper officer of the company to go out to make the inspection of the highway was a disputed fact and the evidence on that point being in conflict, the finding of the Commission in favor of the claimant is conclusive. It is conceded that all the facts which are necessary to determine whether the accident arose out of and in the course of the employment are undisputed. However, we have set out above the important part of the claimant's testimony. Therefore, this admission of the appellant raises the question as to whether or not there was "sufficient competent evidence in the record to warrant the making of the award." It is well settled that it is incumbent upon the plaintiff to prove both that the accident arose out of and in the course of the employment and that the showing of the one without the other will not be sufficient to authorize the making of an award in favor of the claimant. But in determining whether the Commission's award was justified by the evidence on appeal, the court considers only evidence most favorable in support of such award together with all reasonable inferences which may be drawn therefrom to support the conclusions of the Commission. [Jones v. Century Coal Co., 46 S. W. (2d) 96; Schulte v. Grand Tea & Coffee Co., 43 S. W. (2d) 832; Keithley v. Woods Bros. Const. Co., 56 S. W. (2d) 628; Hinkle v. Miller, 56 S. W. (2d) 825.]

The learned trial judge in affirming the award of the Commission stated very concisely and succinctly his reasons, which we adopt:

"The Workmen's Compensation statute covers only, 'Personal injuries arising out of and in the course of such employment.' In other words, in order for claimant to recover, he must, when injured, have been engaged in a service arising (a) out of and (b) in the course of his employment, and the proof of one does not prove the other.

"While the employer-insurer contends that this injury did not

arise out of claimant's employment, that point is not strenuously insisted upon in the argument; and if it were the court would have to hold that there is at least substantial evidence that when claimant went out to inspect the road that he was doing so by direction of the employer. The purpose of the employer was to complete its contract by getting gravel to the road as expeditiously as weather conditions and conditions of the road would permit; and the purpose of claimant (and other gravel haulers) was to haul gravel as regularly as weather conditions and condition of the road would permit. With that in view, when claimant went out to inspect the road, whether at the express direction of employer, or on his own motion by reason of his employment and with employer's knowledge and consent, he was engaged in a service arising out of his employment. 2. Now while engaged in a service arising out of his employment, was he injured in the course thereof. If there is any substantial evidence of this fact the award must be affirmed.

"The question before the Commission was not whether claimant assumed a dangerous position in the course of what he was about; neither did any question of negligence enter into it; but the simple question was whether he was in the progress of the task in hand when injured. There was substantial evidence, in fact all of the evidence is, that while claimant was pursuing the course of his task, that is, while he was in the continuance or graudual advance of a trip of inspection with, in, or on, an automobile truck, he was injured. That he was guilty of negligence in that pursuit there can be no question, but negligence of claimant is no defense under this act of the Legislature. The words 'in the course of' do not and cannot mean, as employer-insured's argument would imply, that claimant when injured must have been in or on a particular part of the conveyance used, because such narrow construction as that would make any negligence of claimant a complete bar to recovery.

"In the opinion of the court there was substantial evidence before the Commission that claimant's injuries were received while he was engaged in a service arising out of and in the course of his employment, and the award will be affirmed.'' [See Jackson v. Euclid-Pine Investment Co. (Mo. App.), 22 S. W. (2d) 849; Metting v. Lehr Construction Co. (Mo. App.), 32 S. W. (2d) 122; Leileich v. Chevrolet Motor Co. (Mo. App.), 40 S. W. (2d) 601.]

No point is made as to the amount of the award. Claimant was very seriously and permanently injured. It follows that the judgment of the circuit court affirming the award of the Commission should itself be affirmed. It is so ordered. *Becker, P. J.,* and *McCullen, J.,* concur.