JOHN H. DUGGAN, APPELLANT, v. TOOMBS-FAY SASH & DOOR COMPANY, AND LUMBERMEN'S MUTUAL CASUALTY COMPANY, RESPONDENTS.——S. W. (2d) —.

Springfield Court of Appeals. November 13, 1933.

Motion for Rehearing overruled, January 10, 1934.

*Mann, Mann & Miller* for appellant.

*Julian N. Smith* and *Arthur W. Allen* for respondents.

SMITH, J.—This case arose before the Workmen's Compensation Commission upon the claim of John H. Duggan against the Toombs-Fay Sash '& Door Company, employer, and Lumbermen's Mutual Casualty Company, insurer.

For a statement in this case, we use the statement of the appellants, as follows:

"This is an appeal from a judgment of the Circuit Court of Greene County, Missouri, Division No. 1, rendered at the January Term, 1933, of said court, reversing and remanding an award of the Missouri Workmen's Compensation Commission, awarding compensation to appellant herein against respondents.

"The only testimony introduced before the Commission was the evidence of appellant, John H. Duggan, which, together with stipulations between the parties as to formal matters and the nature and extent of the injury, makes up the entire record, so far as the facts are concerned. The real and principal question is as to whether or not the accident in which appellant received the agreed injuries arose out of and in the course of his employment. The Commission found that the accident did arise out of and in the course of the employee's employment and awarded compensation. This award was reversed by the Circuit Court and the cause remanded to the Commission.

"The facts, about which we believe there is no dispute, are as follows:

"It was admitted that appellant was employed by respondent, Toombs-Fay Sash and Door Company, on March 6, 1932, and that on that date the parties were operating under the Missouri Workmen's Compensation Act and that the respondent, Lumbermen's Mutual Casualty Company, was the compensation insurer for its co-respondent and that on that date the appellant sustained the personal injuries for which he filed his claim. It was further admitted that on the date of the first hearing, July 12, 1932, appellant was still temporarily totally disabled as a result of the injuries he sustained and that his average weekly wage was $28.85 and his rate of compensation, if entitled to compensation, was $19.23 per week. It was further admitted that the employer had notice of the accident, as

required by the Act, and that the claim for compensation was duly filed in time with the Commission.

"Mr. Duggan, the only witness, then testified that he lived at 1149 Ferguson Avenue in Springfield, Missouri, and was a salesman for the Toombs-Fay Sash and Door Company, the employer; that his employer furnished him an automobile for use as a salesman, which was owned by the employer and all the expenses of which were paid by the employer; that he used it in his business as a traveling salesman and was at liberty to use it for his personal convenience when not engaged about his business; that he called on the trade in a territory outside of the City of Springfield. He testified he had no regular hours of employment, but just keep going all the time, except that he didn't call on any trade on Sunday. He testified further that he did work regularly on Sunday, in that he fixed up his catalog and price lists on Sunday and each Sunday was required to and did fill out and mail advance cards to the customers he intended to call on that week. That these advance cards were postals to his customers, advising them as to what time he would call at their place during the week and that he was required to send these cards out in advance of his trips by his employer.

"Mr. Duggan then testified that on Sunday afternoon about five o'clock, March 6, 1932, he suffered an automobile accident and received the injuries agreed upon. This accident occurred at the intersection of Grand Street and Campbell Avenue in the City of Springfield.

"He testified that on that particular Sunday, March 6th, he fixed up his catalogs, etc., and made out his advance cards before noon dinner, which was eaten by his family late that day. That after dinner he started to go to the post office to mail them which was where he generally mailed the cards, and then as he was ready to start, thought to and did ask his wife and her uncle to go with him on the trip to mail the cards for the ride. That they left about four o'clock and instead of going to the post office, he drove north to Grand Street from his home and then east on Grand Street in the direction of the State Teachers College, looking for a mail box from which mail was collected on Sunday. He found such a mail box back of the Teachers College on Kingshighway and Lombard, a short distance north of Grand Street and mailed his advance cards in this box. He testified that his purpose of making the trip 'was strictly to mail these cards.' "

"He further testified that when he started out, he had no particular intention of going any place but to mail the cards but that after he mailed them, they stopped in at a friend's house, who lived on the opposite side of the street from the mail box and only three or four doors north thereof. That they first conceived the

idea of stopping at this friend's house after they got over there and saw they were so close to it. At the friend's home they played some bridge and then left to go home about five o'clock, having stayed at the friend's house but a short time. After they left the friend's house, they went back on Kingshighway to Grand Street and west on Grand toward Mr. Duggan's home, such being the shortest route to his home, except that they went one block south out of their way to pick up Mr. Duggan's son, who was at a house on Delmar, and after picking up the boy, they came back to and were going west on Grand Street, the most direct route home, when the accident happened.

"Mr. Duggan then testified to his medical expenses, which was all the evidence at the original hearing.

"On this hearing, Referee Lumke, before whom the matter was heard, found that appellant was injured in an accident arising out of and in the course of his employment; that the employer had notice of the accident and that the claim was filed in time and in due course; that the employee had been temporarily totally disabled up to the time of the hearing and of the award, and that this disability would continue for some time in the future, which latter facts had been agreed to, and awarded the employee compensation for 18-2/7 weeks at $19.23 per week, or a total of $351.64, and the value of necessary medical aid not furnished by the employer or insurer, amounting to $379, or a total amount of compensation and medical aid of $730.64. Employer and insurer filed an application for review by the full Commission and on such review, the full Commission, on September 20, 1932, modified the award by allowing compensation for nineteen weeks, or $365.37, plus the value of medical aid amounting to $379 or a total of $744.37, same being a temporary or partial award, because the extent of the permanent disability could not, at that time, be determined, although by then the temporary total disability had been determined and agreed upon as per the amount found by the full Commission on review.

"At the request of the employer and insurer, respondent's herein subsequent hearing was then held on November 15th, for the purpose of making the temporary award final.

"At this last hearing it was agreed that the permanent disability suffered by the employee as a result of the accident of March 6, 1932, was ten per cent loss of use of the left leg at the hip, such stipulation being made without prejudice to the rights of any of the parties to appeal from the final award and no further facts were introduced.

"Following this agreement and on the 29th day of November, 1932, the full Commission issued its final award, awarding appellant herein the sum of $379 for medical aid not furnished by the

employer and insurer, and the sum of $398.06 for compensation on account of the permanent injuries or a total amount of $777.06. We understand there is no dispute as to this amount, the Commission finding that the accident did arise out of and in the court of the employee's employment.

"This award of the Commission, based on the above facts, was reversed and remanded by Division Number 1 of the Circuit Court of Greene County, Missouri, on the appeal of the employer and insurer, respondents in this court, the courts in effect holding that the accident did not arise out of and in the course of the employee's employment."

After the testimony had been submitted to the trial court, that court in its memorandum opinion set out clearly the testimony of the case with an analysis of the same, which judgment is as follows:

"This case is before the court on appeal by defendant and insurer from award of the Missouri Workmen's Compensation Commission, made November 29, 1932; allowing plaintiff compensation for injuries sustained by him in an automobile accident on March 6, 1932.

"Plaintiff was allowed for medical aid the sum of $379 for permanent partial disability the sum of $19.23 per week for 20.7 weeks; said payments to begin as of March 6, 1932; the award being made against defendant and its insurer, Lumbermen's Mutual Casualty Company.

"Aside from the claim, in conventional form, and answer of denial, duly filed; notice of hearing; award of the commission; notice of appeal; the record certified to this court as required by law consists entirely of the testimony of plaintiff. To the question, "Did accident arise out of and in the course of the employment;' the answer is 'yes;' to the question, 'Work employee was doing for employer at time of accident;' the answer is 'Salesman;' to the question, 'was above employee in employ of above employer at the time of accident;' the answer is 'Yes.' Beyond this there is no finding of the constitutive facts by the Commission bearing upon the question raised on this appeal.

"There is no dispute or conflict as to the testimony, consequently nothing remains but to analyze the evidence given by the plaintiff, to determine, as a matter of law, if there is sufficient competent evidence in the record to warrant the making by the Commission of the award appealed from.

"The testimony of plaintiff shows, in substance;

"That he was a traveling salesman for defendant, who provided him with an automobile for his use in covering his territory, which embraced various towns in the vicinity of Springfield, Missouri; Springfield being the home of plaintiff and the headquarters of defendant. This automobile was kept at the home of plaintiff, and

he was privileged, when off duty, to use the car for his own or private purposes. On the date of the accident, which was Sunday, March 6, 1932; plaintiff resided at 1149 Ferguson Avenue, in Springfield, which is in the southwest part of the city, about two blocks south of Grand Street, which is an arterial thoroughfare running east and west in the south part of the city. Plaintiff was at home on that day, as he did not call on any customers on Sunday, but each Sunday morning he did revise his catalogue and price lists and made out postal cards to be mailed to customers upon whom he expected to call during the coming week, giving notice of the day on which he expected to call. Plaintiff had been in the habit of mailing these cards Sunday at the main post office in Springfield.

"On the day—Sunday—that plaintiff was injured, he had made out the cards as usual, intending to mail them at the post office. He concluded, however, to invite his wife and her uncle to go for a ride; and they left plaintiff's home, in the car of defendant, about four o'clock in the afternoon. Upon reaching Grand Street instead of going to the post office, as was his custom, plaintiff drove east on said street a number of blocks and a considerable distance beyond where he would have turned north to go to the post office. At the corner of Grand and Kingshighway, which is at the southwest corner of the State Teachers College campus, he began to look for letter boxes and located one on Kingshighway, a block north of Grand, from which collection was made at five o'clock P. M. The cards were posted in that box.

"Plaintiff testified that at the time he made out the cards and at the time he started to make the trip that day, his sole purpose was to mail the cards in the post office, that he intended to go alone, but that when he was ready to leave the house he invited his wife and her uncle to go along.

"After posting the cards, it occurred to plaintiff that he was close to the home of a friend who lived on Kingshighway a short distance north of the mail box, and he conceived the idea of dropping in and visiting at the friend's home. The car was driven to this friend's home, where the occupants got out and went into the house; remaining there for an hour or so, during which time they played bridge.

"Upon leaving the friend's home, plaintiff drove back south to Grand Street, then west, a distance; then turned south off of Grand a couple of blocks to Delmar to get his son and take him home. When the son was picked up, the car was headed back north to Grand, then continued west on Grand to the point where the accident occurred.

"The first question to be determined is whether the injuries were

received in an accident arising out of and in the course of the employment.

"The Compensation Act is remedial. It is to be liberally interpreted to the end that proper parties may receive its benefits. They are also to be given the advantage of every reasonable inference from the evidence most favorable to them, as well as the benefit of the rule that doubt as to the right to compensation should be resolved in favor of the injured employee. Moreover, the court should look to the evidence propitious, if any, to support the finding and accord to the claimant, as the prevailing contestant, the benefit of the fair and legitimate deductions to be drawn from the proof. Above all the court should decide the case, with regard to the right to compensation—where the casual connection is sought to be made between the act and the injury upon its own peculiar facts and circumstances.

"It must be borne in mind, however, that the act does not speak merely of any accident, but speaks of injury by accident, arising, not whenever, wherever, however or whatever, but arising out of and in the course of employment.

"The burden rests, not upon the defendant employer to exculpate itself from a presumption that the accident occurred while plaintiff was engaged in the fulfillment of the duties of his employment; on the other hand the *onus* is upon plaintiff to establish that fact. Plaintiff does not meet that obligation by building up or merely creating an equipoise, if indeed he has done that in this case. Even that would be insufficient; he must have a preponderance. 'Out of and in the course of' the employment must be by him established to have existed jointly at the instant of the injury.

"It would seem that in the light of plaintiff's testimony, for the candor of which he is to be commended, which points indubitably to his having that Sunday afternoon completed his work in mailing the cards, on a path or route remote from that theretofore habitually pursued by him and hours removed from the time he had previously attended to the mailing mission, he then of his own volition embarked upon on adventure for his and his family's own pastime, pursuing his and their own pleasure, and for the convenience also, of his son, in taking him home, after the visit of sociability and rubbers of bridge in the home, not of customers or prospective patrons of defendant, but of personal friends of plaintiff and his family;—it would seem that so far from having successfully carried the burden imposed upon him by pronouncement of judicial law in this State, in case after case that has arisen under the Workmen's Compensation Act, he has shown his injuries arose neither within the time nor period of employment, nor while he was engaged in or about a matter from which defendant could have or did either directly or indirectly receive any benefit. He has failed to show

that the injuries originated in the work or while he was engaged in or about the furtherance of the affairs of the employer. Can it be said, giving this unfortunate plaintiff the benefit of everything to which a sympathetic ear, mind and heart would turn in his truthful narrative of the events of that day, taking his own version of his acts, his expressed intentions, conceptions and doings, of his own choosing, selection and determination—all after having posted the cards—being a clear unequivocal departure from the business of promoting the interest of the defendant employer, that his injuries were in any sense the direct or proximate result of an occupational peril. There was no causative connection between his injury and his employment. Can it be successfully affirmed, in justice to the testimony, the rights of defendants and in fairness to the carefully drafted enactment, its spirit as well as its letter, that even though plaintiff was using the employer's car, after he had deposited the cards in the mail box, that he was not thereafter wholly detached from his employment and that when injured he was not at liberty from his service?

"He had reached the junction, the cut-off, between the master's and his own affairs, and while in and about the latter he came to his hurt. Granting that it was part of his duty to mail out the cards, is it reasonable to add that he might deviate from his usual and customary and less hazardous practice of posting them at the post office, and on this particular day instead of going alone in the morning, as he testified was his habit, for some reason deciding to defer the trip until afternoon and take his family along, and then setting about to explore for a street letter box in a remote part of the city, from which mail would be collected at five o'clock that evening conveniently close to the home of friends sufficiently intimate to warrant an uninvited visitation to devote the afternoon's hours in several rubbers of bridge and then when the shades of the holiday evening were about to fall, set out to yet another station to get his son to take him along with them home, and yet mulct defendants in compensation; or is it logical to say that his injuries, at that hour, on that Sunday, following the sociabilities, related solely to his welfare and pleasure and that of his family, and not in the remotest degree akin or incidental to business or interest of the defendant; or for that matter, that plaintiff himself had any reasonable ground to think that the social hour's visitation at his friend's home or the stop to call for his son and the taking of him home, was even incidental to the discharge by him of any duty he owed his employer, defendant. Not one of these was in the line of duty. It was not his errand, in a material sense, that brought him to the house of his friends, or to then proceed to quite another address and pick up his son to take him home, but these were purposes purely his own. None of it was reasonably inci-

dental to the carrying out of a task or special mission assigned to him by defendant, but they constituted a distinct departure therefrom, a clear abandonment of the path of duty.

"Manifestly had he returned the employer's automobile to his home after he had posted the cards, the collision would not have occurred; and there would have been no claim. The court is not unmindful of the rule that if an employee has to pass along the public street in a car and sustains an accident by reason of the risk incidental to the street the accident arises out of as well as in the course of the employment. But it is not enough to hold that the case is a compensable one that the accident happened by reason of the risks incidental to the streets; nor that the duties of the employee in part required that he traverse the public streets. The risk of injury to plaintiff, which he encountered was, in the circumstances of the case, one to which he would have been equally exposed apart from his employment. That being true, then the injuries did not arise out of the employment. He was not by compulsion in the performance of his duties, in his return from the social visit, or from calling to take his son home, exposed to a risk of the automobile collision in which he was injured which was greater than that to which the public generally in that vicinity was subject. If that be true, then the case does not fall within either the language or spirit of the Act. He will not be heard to say, in the existing circumstances, that the accident would not have happened, had he not been engaged in the particular employment. He is no more entitled to compensation because the accident took place where it did than if, after he mailed the cards, instead of having made the social visit and then gotten his boy, had taken a drive of many miles and met with injuries in an automobile crash.

"Judging from plaintiff's printed and oral presentation of the case, it is his theory that having started on a mission for defendant employer, he is entitled to compensation for injuries sustained in returning, no matter where he went in the interim or what he undertook, nor the time required, whether on an adventure of his own choosing, decision or election, or whether for the private and personal business or pleasure of himself or his family, after he had accomplished what he testified was the purpose of his trip; which he states was strictly to mail the cards. His counsel insists that when he started home that evening he then resumed or re-entered upon the discharge of his duties to his employer, that of returning the automobile to plaintiff's home.

"There must be some evidence to support plaintiff's claim of liability, the chain of events must be complete, the sequence unbroken from the start of the trip to mail out the cards to the occurrence; to-wit, the colliding of the car being driven by the plain-

tiff with another car, in which fortuity plaintiff received his injuries—else compensation cannot be allowed.

"The essentials of a compensable loss be supplied not merely by broad and liberal construction of the Act, which while it is not cumulative to nor supplemental of the common law, but in truth is in its very nature entirely substitutional, and in no sense founded upon negligence—but the requisite is evidence. None appearing; and there not being sufficient evidence in the record to warrant or support the making of the award appealed from it is the judgment of this court that the finding and judgment of the Missouri Workmen's Compensation Commission awarding compensation in favor of plaintiff herein and against defendants, be and same is hereby reversed and the cause remanded with directions to said Commission to proceed further in accordance herewith."

The one question involved in this case is whether or not the injuries sustained by Duggan in the accident arose out of and in the course of his employment.

There are some general propositions in this case about which there can be no question. The burden in this case, and in all others of like kind, is on the injured employee to show that his injuries are the result of the accident, "arising out of and in the course of his employment." [Bise v. Tarlton, 35 S. W. (2d) 993; Butner v. Hayes Const. Co., 60 S. W. (2d) 680; Jackson v. Aetna Bricklaying & Construction Co., 59 S. W. (2d) 705, 707.]

It is also well settled that it is incumbent upon the plaintiff to prove both that the accident arose out of the employment as well as that the accident arose in the course of the employment, and that the showing of the one without the other will not be sufficient to authorize the making of an award in favor of the plaintiff. [Butner v. Hayes Construction Co., 60 S. W. (2d) 1. c. 682; Metting v. Lehr Construction Co., 32 S. W. (2d) 121; Dunnaway v. Stone & Webster Engineering Corp., 61 S. W. (2d) 398, 399.]

We are cited to many cases defining the meaning of the words "arising out of," and "in the course of," and we find many attempts at their definition, but in the case of Metting v. Lehr Construction Company, supra, at page 123 we find this simple definition, "The words 'arising out of' refers to the origin or cause of the accident, and are descriptive of its character, while the words 'in the course of' refer to the time, place and circumstances under which the accident takes place." Citing cases. Our Supreme Court in an opinion by RAGLAND, J., in Leilich v. Chevrolet Motor Co., 40 S. W. (2d) at page 605, said "There is no justification for investing the words 'arising out of . . . his employment' with a technical meaning; they are plain, ordinary, and everyday words, and should therefore be given their plain, usual and ordinary meaning. Every case involving their application should be de-

cided upon its own particular facts and circumstances and not by reference to some formula.'' [Sawtell v. Stern Bros., 44 S. W. (2d) l. c. 269.]

After reading a great number of cases cited by both sides in this controversy, we think we may safely say that an injury arises out of and in the course of employment when it occurs within the employee's period of employment at a place where he may reasonably be while engaged in that employment, and at the time he is fulfilling the duties of his employment, or is engaged in something incident to said employment, and an injury which does not come within these essential elements is not entitled to an award. Keeping in mind then these essential elements, and that every case must be decided upon its own particular facts, let us analyze a little further the uncontroverted facts in this case.

The employee was furnished a car by the employer to use while he was engaged in the business of the master, and he was also permitted to keep the car at his own home and to use it for his own pleasure when not in use for the employer. He thus had possession of the car and used it in a dual capacity. On this particular day he used the car to post the cards. There can be no question but that posting the cards was in the course of his employment. And if he had returned directly home from the mail box and had received the injury on his direct return home there would be no question in the writer's mind but that he would be entitled to compensation, because his going and returning from mailing the cards would be some acts incident to his employment. But he did not return directly home from the mail box. Immediately after mailing the cards he commenced to use the car for his own pleasure. When he went north from the mail box, deciding so to do at the mail box, he was then not engaged in the business of his employer, and not engaged in anything incident thereto. He was as far from it in fact and in law as he would have been had he decided at the mail box that he and his wife and her uncle would drive to Lebanon, fifty miles away, to engage in a game of bridge. It could not well be contended that if he had gone to Lebanon to visit friends and to engage in a bridge game, that he would have been doing anything incident to his employer's business, and if he had been hurt while at Lebanon, or in going to Lebanon, that his employer was liable. We think it is equally as certain that if he had been hurt while returning from Lebanon, his employer would not be liable for his injury, for his return trip from Lebanon to his home could in no sense be considered a part of his return trip from mailing the post cards, even though it all occurred before he had returned from mailing the cards.

According to our way of thinking, there can be no difference in going the fifty miles north to Lebanon and engaging in a social

game than in going one block north from the mail box, and engaging in a social game. He was not engaged in the employer's business while at the friend's home, and we think he was not engaged in it at any time while returning from his visit. When he decided at the mail box to not return home but to go on a visit for his own pleasure he at that time appropriated the use of the car for his own pleasure, and that use continued, as we view it, until he got back home from the pleasure trip, and the going back home by way of where his son was visiting was the consummation of and a part of the pleasure trip, and it was on this pleasure trip that the injury occurred. There is no controversy about the facts. The only contention is that because the place of the accident was on the direct road from the mail box back to the claimant's home, it was a part of his task or duty to go back home, and was incident to his employment.

We have been cited many cases in support of the suggestion, that where facts are undisputed in a compensation case ultimately the question is one of law, and that the Compensation Commission's finding on undisputed facts is not conclusive on the reviewing court.

We are also cited many cases on the proposition that the finding of the Compensation Commission that the accident arose out of and in the course of the employee's employment is a finding of fact that cannot be disturbed or weighed by the courts on appeal if there is any substantial evidence to support the finding.

We deem it unnecessary to cite in this opinion the long list of authorities submitted by both sides in this briefs on these two propositions. Many of the same cases are cited by both. One of these cases cited by both parties contains these two propositions. This case is Sawtell v. Stern Bros. & Co. (Mo. App.), 44 S. W. (2d) 264. The appellant in his brief relies strongly on this particular case and says, "This case, we feel, is practically on all fours with the present controversy before this court." In that case the circuit court reversed the finding of the Commission and held that the claimant was entitled to compensation. We think that case was properly determined, but we also think there was a vast difference in the facts in the two cases, and we do not agree that the two cases are practically on all fours. From the Sawtell Case we quote the facts as follows:

"From the admissions and the testimony, the following undisputed facts appear: On the date of the injury, November 30, 1929, James H. Sawtell was an employee of Stern Bros. & Co. of Kansas City, Missouri. His work was that of a bond salesman; he had been with the company since 1927. Sawtell lived at Topeka, Kansas, where he maintained a branch office, and from which place he would go out over an unrestricted territory in a quest for purchasers of bonds offered for sale by his employer. He had friends, acquaint-

ances, and relatives in Kansas City, Missouri, and pursued the business of his employer at that place and elsewhere. He was acquainted with a Mrs. Wright who lived in Kansas City with her husband, and previous to the date of the injury he had met her at Emporia, Kansas, and out of a conversation between them she became interested in the purchase of certain bonds. Subsequently there was correspondence which led to an arrangement for a meeting between the parties at the office of Stern Bros. & Co. in Kansas City. In pursuance thereof, claimant and his wife on the 30th day of November, 1929, came to Kansas City, Missouri, and met Mr. and Mrs. Wright at the office of Stern Bros. & Co. for the purpose of discussing the sale of bonds. These four people lunched together that day, and the subject of bonds was mentioned at intervals. After lunch, the wives of Wright and Sawtell desired to drive around town to see the Christmas decorations, and Mr. Wright and Sawtell went to the home of the Wrights, where for some time they discussed the bonds in question. It developed that the funds with which the bonds were to be purchased belonged to Mrs. Wright, and her husband desired that she hear the discussion. About 4:30 P. M., the men agreed that a further discussion about the sale of the bonds could be resumed when Mrs. Wright returned. It was not known when she would return, but claimant says that he thought perhaps she would be back about five o'clock. While waiting for the return of Mrs. Wright, claimant went to visit his sister and niece who lived in the immediate vicinity and about four and one-half blocks from the Wright residence. The home of the Wrights was "right off Brookside on 56th Street," and the home of claimant's sister was "two blocks and a half south and two blocks east. About 5:30 P. M., *while claimant was on the return journey from his sister's house to the Wright home*, and at Fifty-eighth and Brookside, a little more than two blocks from the Wright home, he was struck down by an automobile in charge of a hit-and-run driver, rendered unconscious, and otherwise injured." (Italics ours.)

It is plain to be seen from the above statement that the employee was injured while going to the home of the prospective buyer for the purpose of making a sale of the bonds for the benefit of his employer. He had an engagement to return at that hour, and he was returning at the time of his injury. He was at that time in the course of his employment just as much as he would have been had he been returning from attempting to make another sale. His visit was over, and he, at the time of his injury, was on his way in his effort to make a sale for his employer. He was in the same position that the plaintiff here would have been in had he been injured while on his way to mail the post cards. Sawtell was on his way to the home of a prospective buyer, and was in the course of his em-

ployment. Not so with Duggan in this case.

Section 3342, Revised Statutes of Missouri 1929, places upon the courts some duties to perform in a case of this kind. This section specifically states that "the court, on appeal shall review only questions of law, and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other; . . .

3. That the facts found by the Commission do not support the award.

4. That there was not sufficient competent evidence in the record to warrant the making of the award."

Without attempting to continue this opinion at greater length, we, in view of the clear statement of the appellant above quoted, together with the illumination thereof by the trial court, and a rereading of all the evidence by us, are forced to the legal conclusion that there was not sufficient competent evidence in the record to warrant the making of the award, and that the judgment of the circuit court should be affirmed. It is so ordered. *Allen, P. J.*, not sitting; *Bailey, J.*, concurs.