Eliese **KAMMEYER**, Employee,
(Plaintiff) Appellant,

v.

**BOARD OF EDUCATION**, Employer, and
Pacific Indemnity Company, Insurer,
(Defendants) Respondents,

St. Louis Teachers Union Local 420, American
Federation of Teachers, Intervenor
as Amicus Curiae.

No. 31614.

St. Louis Court of Appeals.

Missouri.

June 15, 1965.

Rehearing Denied July 13, 1965.

Application to Transfer Denied
Sept. 13, 1965.

Quinn & Quinn, William B. Quinn, Julia M. Quinn, Vernon T. Kelly, St. Louis, for appellant.

Whalen, O'Connor, Grauel & Sarkisian, Fred B. Whalen, Warren Grauel, St. Louis, for respondents.

John H. Martin and Melvin J. Thum, St. Louis, for intervenor as amicus curiae.

RUDDY, Presiding Judge.

This is a proceeding brought under the Workmen's Compensation Act. The Circuit Court affirmed an award of the Industrial Commission denying compensation to employee.

The employee, an elementary school teacher, while walking from her automobile to the Froebel School on the evening of March 17, 1960, to attend an "open house" meeting scheduled at the school, slipped on snow and ice and fell and was injured.

The St. Louis Teachers Union Local 420, American Federation of Teachers, was granted leave by the Circuit Court of the City of St. Louis and by this court to intervene as Amicus Curiae in these proceedings.

The sole question is whether the accident causing employee's injury arose out of and in the course of her employment as a school teacher.

In her claim she alleged that she slipped on an accumulation of ice and snow while on the school premises. The Industrial Commission when making the award denying employee's claim made the following findings and conclusions:

"The Commission finds from all the evidence that the accident suffered by employee did not arise out of and in the course of her employment. In reaching this ultimate finding, the Commission finds that employee slipped and fell upon the ice on the public sidewalk along the east side of Pennsylvania Avenue adjacent to the grounds of the Froebel School at a point approximately twenty feet south of what is referred to in the evidence as 'the second gate into the school yard' at a time when she was going to her work in said school; and that, since said accident did not occur upon employer's premises, same is not compensable.

"The Commission further finds that the work that employee was, at the time of the accident going to perform, was a part of her regular duties as a teacher."

Employee in her brief "concedes that the finding of fact made by the Industrial Commission on the disputed and controverted issue of where the appellant fell, to-wit, ' * * * upon the ice on the public sidewalk along the east side of Pennsylvania Avenue adjacent to the grounds of the Froebel School, and that said accident did not occur upon the employer's premises' is supported by substantial evidence and is conclusive and binding upon appellant (employee) and the St. Louis Court of Appeals in determining this appeal."

■ Supplementing employee's concession, we add that we have examined the evidence and find that this finding made by the Commission is supported by substantial and competent evidence. Employee in her points relied on confines her attack to the finding made by the Commission, "that the work that employee was, at the time of the accident, going to perform was a part of her regular duties as a teacher." Our summation of the evidence before the Industrial Commission will be confined to such evidence as pertains to this finding of the Industrial Commission challenged by the employee.

Employee was a teacher employed by the Board of Education of the City of St. Louis since 1942. For approximately one year prior to her fall she had taught a class of mentally retarded children at the Froebel Elementary School. Her immediate superior was Miss Lucille Berkel who was principal of the school. Her teaching hours at the school were from 8:30 A.M. to 3:30 P.M. daily, but she usually got to the school about 8:15 A.M. because on certain days she had yard duty. On the day of her fall she had yard duty and had to report at the school at 8:15 A.M. and also supervised play in the yard during morning and afternoon recesses on that day.

William Kottmeyer, Deputy Superintendent of Instruction in the school system, said that the teacher is directed to be ready and prepared for teaching at 8:30 A.M. but that the precise limits are not confined "in clock hours."

In addition to her regular classroom duties employee was required to attend meetings held after 3:30 P.M., with other teachers of the school when called by the principal of the school. She said these meetings would be called "every few weeks." It was a practice for many years in the public school system of the City of St. Louis to hold "open house" meetings and this was a customary part of the operation of the schools in the city. The primary purpose of these meetings was to invite the parents of the children to meet with the respective teachers of their children to enable the teacher to personally discuss with the parents the conduct of their children, their

progress and type of work they were doing. It was also the function and duty of each individual teacher at the open house meeting to discuss with the parents of the children they were teaching in their classrooms the problems confronting the children. These meetings were held during the day occasionally, but most frequently in the evening hours. The employer, Board of Education, did not furnish transportation to and from the school for the teachers and the employer in no way attempted to control the means and methods of the teachers going to and coming from school. It was the teacher's own responsibility as to how she would travel between her home and the school. There were no activities in connection with the open house meetings to be performed by the teacher outside of the school building itself.

Whenever a school bond issue or tax increase was submitted to the voters for approval at an election, the Superintendent of Education would time the open house meeting in each school for a date close to the eve of the election in order to use the meeting as a means of publicizing the need for approval of the school bond issue or a tax increase or both. This had been a practice of the Board of Education for many years. A bond issue proposal and a tax increase proposal on behalf of the Board of Education had been submitted to the voters of the City of St. Louis a number of times prior to March 22nd, 1960, and had failed to get the voters' approval. These matters were resubmitted to the voters for approval on March 22, 1960. The Board of Education and the administrative officials of the public school system regarded approval of the bond issue and tax increase as a "must" and said that failure would create a desperate and critical situation. A systematic campaign by the Board of Education and its administrative people was conducted, and included in the campaign was the distribution of informative literature to the parents of the children attending the schools. One of the measures used in the campaign was a directive to all schools to hold an open house

meeting, at which meeting, in addition to the parent-teacher communication as heretofore stated, the principals of the schools were directed to and did show a film at each of the elementary schools and made an explanation to the parents of the public school needs. The principals were directed to have the teachers urge the children to have their parents attend this meeting which consisted of two parts. Initially, the parents were shown a film by the principal of the school publicizing the coming election. Thereafter, the parents were directed by the principal to go to the room in which their children were housed and to discuss with the teacher the matters heretofore stated. It will be noted that only the principal of the school participated in the initial meeting concerning the campaign for approval of the bond issue and tax increase and that the teachers had no part in this meeting as will be further demonstrated in the testimony of employee.

Pursuant to the directive of the Board of Education and its superintendent, the principal of Froebel School, Miss Lucille Berkel, had a meeting with the teachers of the school several weeks prior to March 17, 1960, and informed them that an open house meeting would be held on the evening of March 17th, 1960.

Employee testified and admitted that the holding of the open house meetings was a regular thing; that sometimes they were held during the day and sometimes at night and that these open house meetings took place at least once a year. She said that pursuant to this order for an open house meeting she got her room in order. By this she meant she got together the material which the children had prepared for the parents to see. When she was asked the purpose of the open house, she said: "To meet the parents." She said that this meeting gave her an opportunity to talk to the parents and become acquainted with them and to give them a chance to discuss the problems involving their children. She was asked: "Q. Was there going to be any discussion with the parents about voting in favor of

the Bond Issue?" and she answered "Not on my part. Q. Or in this meeting you had, were you directed to endeavor to solicit the votes of the parents for the Bond Issue? A. No. Q. Any discussion of that at all? A. No." When asked if she had to attend this meeting, she said that when the principal told her about the open house meeting, it meant to her that she was to be there. She said that she did not send any notices to the parents but that she had the children write letters inviting the parents to the open house meeting, and instructed the children to take them home to their parents. When employee was asked the purpose of the note or letter written by the children, she answered, "It was given the parents—the parents were asked to come to meet the teacher and to discuss any problems which they had, give the parents an opportunity to see what the children had done." She was asked "You considered this part of your duty just the same as you would consider it your duty to be present and teach during the time the school was open?" She answered, "That is right. Q. Was this just one of the things that were included in your regular duties as a school teacher at the Froebel School? A. Well, yes. Q. There was no special direction given to you over what would be given to the other teachers at the Froebel School insofar as this open house was concerned, was there? A. No."

On March 17, 1960, the day of employee's fall, she taught her class until 3:30 P.M. and then went home for dinner. Around 6:30 P.M. she drove her own car back to the school for the purpose of attending the open house meeting. After she got out of her car and before she reached the school premises she fell on the public sidewalk, as found by the Industrial Commission. Her fall occurred around 7 P.M. According to employee and other witnesses, the weather was cold and it was below freezing. It had snowed previously and there was slush, snow and ice on the ground and the testimony indicated that this condition was a general condition prevailing at the

time. Employee contended that it was the icy condition of the ground that caused her to fall. She received no additional compensation for attending this or other open house meetings. She did not attend the open house meeting that evening, finding it necessary to take care of her injuries.

Lucille A. Berkel, principal of the school, testified that employee was under her supervision and had been for four years. She told employee and other teachers in the school to be present at the school for open house. She said that open house was held in the past few years, usually two times a year, and that this was the customary and regular procedure, explaining that "it was regular not special." It was part of the regular operation and part of the teacher's course of duty. She said that the evening of the open house meeting the teachers were to demonstrate teaching procedures and that she, the witness, showed the films to the parents demonstrating the need for the bond issue and the increase in tax. She said employee had the display prepared for the parents on behalf of the school children in her class. In an accident report prepared by the witness, which was introduced by the employee it showed, under the heading "Occurrence Of Injury," that "Froebel School had Open House and parents were visiting." In another report to the Director of Health and Hygiene prepared by the witness, it also showed that the injury occurred at open house at Froebel School and under the inquiry, "What was injured person doing," the answer shows, "She was to be present to meet parents of children in her classroom who were coming to the Open House."

William Kottmeyer, Deputy Superintendent of Instruction, said "as custom and tradition has brought it about" all teachers were expected to attend the open house meeting "unless they were physically incapacitated." However, he said that there was no regular rule or regulation that required attendance of the teacher at open house and that if a teacher failed to report

there would be no punitive action taken. He added that there has never been any particular problem about attendance because the teachers have cooperated completely in the past. He said that it was customary as part and parcel of the matter of operating the schools that the teachers carrying on their particular activities make contact with the parents personally and discuss the conduct of the children and other matters that needed communication between the teacher and parents.

The employee contends that even though the factual issue as to where she fell has been found against her, the accidental injury, nonetheless, is one that arose out of and in the course of her employment and, therefore, she is entitled to workmen's compensation benefits. Opposed to this is the contention of the employer in which it urges the application of the general rule in workmen's compensation cases that injuries by an employee while "going to and returning from work" and "off the employer's premises" are not compensable. The employer points to the evidence that shows the accident occurred before the employee reached the employer's premises where her presence was required to perform services at an open house meeting conducted by the Froebel School as part of employee's regular duties as a teacher and a member of the faculty of the school. The employer further contends that the ice and snow which caused employee to fall and suffer injury did not expose or subject her to a hazard peculiar to her in her capacity as a teacher, nor was it traceable to her employment, but rather the condition of snow and ice was one to which the general public was equally exposed and was common to the community. The employer further contends the finding of the Commission that the accident suffered by employee did not arise out of and in the course of her employment was supported by competent and substantial evidence.

■ It was the employee's burden to show that the injury was by accident arising out of and in the course of her employment. Duggan v. Toombs-Fay Sash and Door Co., 228 Mo.App. 61, 66 S.W.2d 973, l. c. 978.

■ An injury by accident arises "out of" the employment when there is causal connection between the nature of the employee's duties or the conditions under which she was required to perform them and the resulting injury. Lunn v. Columbian Steel Tank Company, 364 Mo. 1241, 275 S.W.2d 298; Morgan v. Duncan, Mo., 236 S.W.2d 281; Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W.2d 128; Nichols v. Davidson Hotel Company, Mo.App., 333 S.W.2d 536; Heaton v. Ferrell, Mo.App., 325 S.W.2d 800; Rankin v. Girvin, Mo.App., 231 S.W.2d 242; Conyers v. Krey Packing Co., Mo.App., 194 S.W.2d 749. And, as we said in the recent case of Liebman v. Colonial Baking Company, employer, and Royal Indemnity Company, insurer, Mo.App., 391 S.W.2d 948: "* * * so that the accident can fairly be said to have been a rational consequence of some hazard connected with (or aggravated by) the employment."

■ But the mere proof of an accident "arising out of" the employment is not enough, there must be proof that the accident occurred "in the course of" the employment. If only one of these conditions is shown to exist, without the other, then the claim for compensation benefits must fail. Lunn v. Columbian Steel Tank Company, supra; Rankin v. Girvin, supra; Duggan v. Toombs-Fay Sash and Door Co., supra. An accident causing injury arises "in the course of" the employment when it occurs within a period of the employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto. Morgan v. Duncan, supra; Wahlig v. Krenning Schlapp Grocer Co., supra; Nichols v. Davidson Hotel Co., supra; Heaton v. Ferrell, supra. The words "aris-

ing out of" refer to the origin or cause of the accident and are descriptive of its character, while the words "in the course of" refer to the time, place and circumstances under which the accident takes place. Duggan v. Toombs-Fay Sash and Door Co., supra. There must be a causal connection as well as a time and place relationship. But as said in Heaton v. Ferrell, supra, (325 S.W.2d l. c. 804): "* * * recognizing the difficulty often encountered in applying broad legal principles to specific factual situations, our courts have frequently said that no all-embracing definition of the phrase 'arising out of and in the course of his employment' has yet been framed, and have added the common-sense admonition that every case involving the quoted phrase should be decided upon its own particular facts and circumstances and not by formula." Also see Lunn v. Columbian Steel Tank Company, supra; Morgan v. Duncan, supra; Rankin v. Girvin, supra; Buckner v. Quick Seal, 233 Mo.App. 273, 118 S.W.2d 100; Duggan v. Toombs-Fay Sash & Door Co., supra.

Applying the aforesaid to the instant case, the question whether the injury sustained by employee off the premises in going to her work is compensable is governed by the circumstances and facts of the instant case and the nature and circumstances of her particular employment.

In support of her contention that her accidental injury arose out of and in the course of her employment, employee states that the "going to and coming from" rule has no application because she was performing a special duty, service or mission for her employer's sole benefit and not for any purpose of her own and the journey to the place of employment was a part of the service rendered the employer. In support of this she says that her participation in the open house meeting was to assist the employer to accomplish the special and desperate purpose of having the school tax increase and building bond issue voted upon favorably by the parents of the school chil-

dren and for this reason her trip from her home to the school was for a special duty and was not a part of her regular duties as a teacher, as found by the Industrial Commission. Whether the work that employee was going to perform at the time of the accident was a part of her regular duties as a teacher or whether she was going to assist the employer to accomplish the special purpose of having the school tax increase and building bond issue voted upon favorably by the parents of the school children was a question of fact to be determined by the Industrial Commission. Therefore, the question before us is whether there is competent and substantial evidence to support the finding of the Industrial Commission, "that the work that employee was, at the time of the accident going to perform, was a part of her regular duties as a teacher." If there is such evidence, we are bound by the finding of the Industrial Commission for we may not substitute our own judgment on the evidence for that of the Commission but we are only authorized to decide whether the Commission could have reasonably made its finding and reached its result upon a consideration of all of the evidence before it and to set aside its finding and decision if clearly contrary to the overwhelming weight of the evidence. We must consider the evidence, together with all reasonable inferences to be drawn therefrom, in a light most favorable to support the finding and award of the Industrial Commission.

The facts in evidence clearly show that employee had nothing to do with that part of the meeting devoted to publicizing to the parents the need of the Board of Education to have the school tax increase and bond issue voted favorably by the parents of the school children. The evidence shows in this case that the teachers' duties do not end with the school session at 3:30 P.M. William Kottmeyer, Deputy Superintendent of Instruction, testified that the precise limits of a teacher's time are not confined "in clock hours." The evidence

shows that in addition to her regular classroom duties she was required to attend meetings held after 3:30 P.M., with other teachers of the school, when these meetings were called by the Principal of the school. She admitted these meetings would be called and held "every few weeks." William Kottmeyer, Deputy Superintendent, and Lucille Berkel, Principal, testified that the open house meetings were held periodically and that these meetings were a customary and regular procedure, the Principal explaining that "it was regular not special." The Principal further stated that it was a part of the teacher's course of duty to attend open house and that at the open house meetings the teachers were to demonstrate teaching procedures. In the Principal's report to the Director of Health and Hygiene, introduced into evidence by the employee, it was shown that the employee was to be present to meet the parents of the children in their classrooms who were coming to the open house. Kottmeyer also testified that it was the customary part of operating the schools that the teachers make contact with the parents personally and discuss the conduct of the children and other matters that needed communication between the teacher and parents. It seems to us it was a significant and important part of the teaching duties of the employee to make contact and communicate with the parents of the mentally retarded children she taught. Employee testified that she considered attendance at the open house meeting with the parents a part of her duties just the same as she would consider it her duty to be present and teach during the day time school hours, and when she was asked if this was one of the things (attending open house) that were included in her regular duty as a school teacher at the Froebel School, she answered, "Yes." There is no doubt the evidence shows that the primary purpose of the open house meetings was to invite the parents of the children to meet with the teachers in order that the teachers may communicate with the parents in regard to the conduct, progress, type of work and problems of the children. The employee admitted that the purpose of open house was to meet the parents. We think the significant evidence that shows clearly that employee had nothing to do with the part of the meeting devoted to promoting the tax increase and bond issue is in her testimony when she admitted that she had no part in any discussion with the parents about voting on the tax increase or bond issue; that she was not directed to endeavor to solicit the votes of the parents for these matters and so far as she was concerned there was no discussion of those matters at all. In this connection we point out that the record shows that the part of the meeting devoted to publicizing the need for approval of the school bond issue and the tax increase was carried on by the Principal of the school. Lucille Berkel, the Principal, in this connection showed a film to the parents and made an explanation to them of the public school needs. After this part of the meeting was concluded the parents were directed by the Principal to the rooms in which their children were housed to discuss with the teachers the matters heretofore mentioned. Only the Principal participated in this part of the meeting and the teachers had and took no part in the meeting devoted to the tax increase and bond issue matter.

For attendance at this and other open house meetings, employee and other teachers received no additional compensation, nor did the employer furnish transportation to and from the school. As the evidence shows, the employer in no way attempted to control the means and methods of the teachers going to and coming from school. How the teacher would travel between home and school was a matter of her own responsibility. We think the record of the evidence demonstrates without a doubt that the work employee was going to perform at the time of her accident was a part of her regular duties as a teacher. This finding of the Industrial Commission is supported by competent and substantial evidence and, frankly, there is no evidence to the contrary. Our under-

standing of a special employment or service is work or service that is not ordinary or usual and is not contemplated within the terms of the employment. Employee's contention that she was performing a special duty, service or mission for her employer's sole benefit in her trip from her home to the school is without merit and is ruled against her.

 Section 287.020(5) RSMo 1959 (this subsection renumbered (6) in Laws 1963, p. 408) 15 V.A.M.S., provides:

"Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment', it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such service."

The general rule in Workmen's Compensation cases is that an injury sustained by an employee while going to and coming from work is not compensable for the reason that it may not be said to be by accident arising out of and in the course of the employment. This is because the hazards encountered by an employee while going to or returning from the regular place of work before reaching or after leaving the employer's premises are not ordinarily incident to the employment and, except in special instances, are held not to arise out of and in the course of the employment. Gingell v. Walters Contracting Corporation, Mo.App., 303 S.W.2d 683; Garbo v. P. M. Bruner Granitoid Co., Mo. App., 249 S.W.2d 477. We said the general rule applies except in special instances. In order for employee to recover benefits she must show that she was engaged in her employer's business at the time and place of her fall and that there was a causal connection between her injuries and her work. In this connection she has the burden to show that she was at a place where by reason of her employment she was re-quired to be and where by reason of her employment she was subjected to hazards to which the general public was not exposed or to which she by reason of her employment was exposed peculiarly and to a greater degree than the general public. The Industrial Commission having found that employee fell at a place "off the employer's premises" on ice and snow, a condition that was common to the general community, the rule is that if the hazard that caused her fall was such, to which the public generally was exposed, her injury is not compensable. Donzelot v. Park Drug Co., Mo.App., 239 S.W.2d 526; Rankin v. Girvin, supra; Payne and Dolan v. Industrial Commission et al., 382 Ill. 177, 46 N.E.2d 925; 99 C.J. S. Workmen's Compensation § 234, pp. 830–831. In other words, an injury which occurs to employee while off the premises of the employer and at a place where she is not required to be as a part of her duties as a teacher, does not occur in the course of her employment and is, therefore, not compensable. Employee was not doing anything incidental to her employment as a teacher at the time she fell, and the relationship of employee and employer did not exist at that time, which is a necessary relationship to the recovery of benefits. None of her duties as a teacher were to be performed outside the premises of the Froebel School. She had a fixed place for her work. Her employer did not provide her transportation nor attempt in any manner to control it. She was at liberty to select the particular way, means and conveyance for going to and from the school. She selected her usual conveyance and route to school.

A case which closely parallels the instant case on the facts is that of Donzelot v. Park Drug Co., supra, decided by this court. In that case the Industrial Commission rejected employee's testimony that she slipped on the threshold of the door on her employer's premises and found that she actually slipped on ice and fell on the public sidewalk in front of the employer's place of business. We affirmed the Commission

in this finding. In upholding the award of the Commission denying compensation to the employee, we found that she was not injured as a result of an accident arising out of and in the course of her employment; that she was not engaged at the time in performing any duties of her employment; that she was not upon the premises where the work of her employer was being carried on, and the services for which she was employed did not require her presence at the place in question and at the time of the accident she was not exposed to any greater hazard by reason of her employment than the public generally. We applied the general rule applicable to injuries from accidents occurring "off the premises" and while "going to and coming from" the place of employment in denying the employee compensation. In this case we quoted from Gullo v. American Lead Pencil Co., 119 N.J.L. 484, 196 A. 438, as follows:

"The narrated facts clearly establish both an accident and an injury to the employee, but in no sense can it be said to have arisen out of and in the course of the employment, and this because the employment in the terms of the statute had not yet begun.

"In seeking the proper construction of the statute, where is the boundary between employment and nonemployment to be found if not in the facts of the present case? Is it when the employee is within a few feet of the place of employment, but still on the public highway in no way connected therewith, and not where the distance intervening is multiplied few or many times? Is it when one starts on the journey from home to factory? If not, at what point between does employment begin? There must come a time when the employee is on his own. At the moment of the accident the respondent was not in employment. The time and place were her own; she could proceed or turn back. She

was in no sense in the service of the employer at the moment."

The same questions could be propounded in the instant case. Clearly in the instant case the employee's services as a teacher did not require her presence at the place where she fell and if we were to allow her compensation because she was on her way to school, we ask the question as was propounded in the Gullo case aforesaid, "where is the boundary between employment and nonemployment to be found?" If we were to hold that her employment starts on the journey from home to school, why not hold that accidents occurring in the home while employee is preparing to make the trip are compensable.

In the instant case nothing done by the employee prior to reaching the school itself was incidental to her teaching employment and in the language of the statute where her injury was not received while engaged in or about the premises of her employer where her duties were to be performed or where services required her presence as a part of such service, she was not entitled to compensation. Other cases denying compensation to the employee on facts similar to those of the instant case may be found in the case of Donzelot v. Park Drug Co., supra. There was no direct causal connection between the employee's work as a school teacher and her injury. Also see Rankin v. Girvin, supra. It seems apropos to restate what was said in the case of Tucker v. Daniel Hamm Drayage Co., Mo. App., 171 S.W.2d 781, l. c. 786:

"The Legislature might at some future time adopt a statute to the effect that employees sustaining accidental injuries while on their way to and from work are entitled to compensation, but we have no such statute at this time. On the contrary, the applicable statute plainly provides that the employer shall only be liable to furnish compensation for personal injury or death of the employee by accident 'arising out of and in the course of his employment.'"

We have examined carefully the cases relied on by the employee and by intervenor herein and find them inapplicable and containing facts which bring them within the exceptions to the "off the premises" and "going to and coming from" rule.

The cases of Lunn v. Columbian Steel Tank Co., supra; Nichols v. Davidson Hotel Co., supra; England v. Fairview School Dist. No. 16 of Power County, 58 Idaho 633, 77 P.2d 655; Kyle v. Greene High School, 208 Iowa 1037, 226 N.W. 71; Bobertz v. Board of Education of Hillside T. P. Union County, 134 N.J.L. 444, 48 A. 2d 847, involved employees who were engaged in a special employment, service, task, or trip.

The cases of Mann v. Board of Education of Detroit, 266 Mich. 271, 253 N.W. 294; Scrivner v. Franklin School District No. 2 of Canyon County, 50 Idaho 77, 293 P. 666; Wahlig v. Krenning-Schlapp Grocer Co., supra; Buckner v. Quick Seal, Inc., supra, involved employments where trips requiring the use of the streets and highways were a regular part of the duties of the employee, which duties increased the exposure of the employee to the hazards of the streets and highways.

The cases of Corp v. Joplin Cement Company, Mo., 337 S.W.2d 252; Gingell v. Walters Contracting Co., supra; Daniels v. Krey Packing Co., supra; Hacker v. City of Potosi, Mo., 351 S.W.2d 760, involved trips made by the employee for a "dual purpose." Under the dual purpose doctrine service to the employer need not be the sole cause of the employee's journey but at least it must be a concurrent cause. If the employee in the course of his normal journey to and from work performs some concurrent service for his employer, this becomes an exception to the general rule excluding injuries from accidents occurring "off premises" and while "going to and coming from" home. The question then becomes: "Was this mission of such character or importance that it would have necessitated a trip by someone if this employee had not been able or willing to handle it in combination with his homeward journey?" Gingell v. Walters Contracting Co., supra, 303 S.W.2d 1.c. 689.

In the instant case, as we have pointed out, employee was not engaged in any special employment, service, task or trip. The trip she was taking on the evening of her fall was not a regular part of her employment and her employment did not require her presence at the place where she fell and employee in the course of her normal journey to the school was not performing any service for her employer.

The trial court's finding and judgment affirming the final award of the Industrial Commission denying compensation to the employee on the ground that the accident did not arise out of and in the course of her employment was proper and should be affirmed by this court. It is so ordered.

WOLFE and ANDERSON, JJ., concur.