MRS. IDA M. SWEENY, MOTHER, DEPENDENT OF CLARENCE A. SWEENY, DECEASED, EMPLOYEE, RESPONDENT, v. SWEENY TIRE STORES COMPANY, EMPLOYER, AND HARTFORD ACCIDENT & INDEMNITY COMPANY, INSURER, APPELLANTS.—49 S. W. (2d) 205.

St. Louis Court of Appeals.   Opinion filed May 3, 1932.

94

*Holland, Lashly & Donnell* and *Harold C. Ackert* for respondents.

*John T. Manning* for respondent.

BENNICK, C.—This is an appeal from the judgment of the circuit court of the city of St. Louis, affirming a final award of the Workmen's Compensation Commission.

The claim was filed in due time by Mrs. Ida M. Sweeny, the mother, as the alleged dependent of Clarence A. Sweeny, the deceased employee. The Sweeny Tire Stores Company, of 1501 North Grand

Boulevard, in the city of St. Louis, is the employer, and the Hartford Accident & Indemnity Company is the insurer.

The death occurred shortly after nine o'clock in the evening of March 9, 1930, the claim alleging that the deceased "was shot and killed in holdup in store." The answer denied, first, that the death was by accident arising out of and in the course of the employment; and, second, that the claimant was a dependent within the contemplation of the act.

John L. Sweeny, the father of the deceased, is the president of the employer company, and the deceased was the secretary of, and a stockholder in, the same, though his stock holdings seem to have been small. He worked regularly as a salesman for the company, for which he received a salary of thirty-five dollars a week and expenses. He did his selling both in the store and on the street, and the company provided him with the use of an automobile for the latter purpose.

On the Sunday evening in question, the father, the deceased, and one Charles Jamison, a tire changer, were alone in the store, when three armed robbers entered and covered the occupants of the store with their weapons. They forced the deceased back behind the counter to the cash register, and compelled him to open it, and after one of the robbers had secured its contents, they all started towards the door. There is evidence that the father told the deceased to let the robbers have the money.

The exact course of events transpiring afterwards is not at all clear from the testimony. One of the robbers either paused in his exit to search the father, or else the latter attempted to grapple with him as he passed on his way to the door. The deceased thereupon started forward, and either stumbled over a rim which was lying upon the floor and was caused to fall against one of the robbers, or else deliberately attempted to seize the robber who had the cash in his possession. At any rate, another of the robbers opened fire upon the deceased, a bullet entering his forehead just above the left eye, and killing him instantly.

From the conflicting testimony in the case the commission found the facts to be that "three men entered the store where Sweeny was working and robbed the cash register; that as they were leaving the store with the money from the cash register, Sweeny grabbed one of the men, and another one of the three drew a revolver and shot him, killing him instantly."

The commission ruled that the death was by accident arising out of and in the course of the employment; and awarded the mother compensation at the rate of ten dollars a week for three hundred weeks. One of the commissioners dissented from the award upon the ground that the claimant had failed to prove her status as a dependent.

An appeal was taken by the employer and insurer to the circuit court, where, as has been heretofore indicated, the award of the commission was affirmed. From the judgment so rendered, and at the judgment term, the employer and insurer have duly perfected their joint appeal to this court.

For their first point appellants argue that the facts found by the commission fail to show, and indeed that there is not sufficient competent evidence in the record to show, that the death of the deceased was the result of an "accident" within the contemplation of the compensation act. Incidentally, the commission did specifically find that there was an accident; but aside from this we think that the point is utterly without merit. Concededly, when the deceased grappled with the robber, as the commission found he did, he subjected himself to a large measure of risk of bodily harm and injury, but nevertheless his death was by no means a necessary and inevitable consequence of his conduct. Many acts which an employee is called upon to perform in the course of his employment are fraught with danger of more or less degree, and yet if injury or death follows, it is said to be an unexpected and unforeseen result of the intentional act of the employee, and is properly to be classed as an accident within the meaning of section 3305 (b), Revised Statutes 1929. [Carr v. Murch Brothers Construction Co., 223 Mo. App. 788, 21 S. W. (2d) 897; Guillod v. Kansas City Power & Light Co., 224 Mo. App. 382, 18 S. W. (2d) 97.] Cases where injury or death has followed under circumstances the same as or similar to those at bar are to be found reported from many jurisdictions, and we know of no case, nor has one been cited to us, where the court has hesitated to denominate the injury or death as an accident, so far as regards the right to compensation. This contention may therefore be ruled against appellants without further comment.

The next point, however, is a much more serious one. This is the suggestion, which is earnestly advanced by appellants, that there is not sufficient competent evidence in the record to show that the death of the deceased was the result of an accident "arising out of and in the course of the employment."

Of course, as we understand the law, the conclusion that the death of the deceased came "in the course of" his employment is not to be seriously questioned. It occurred within the period of the employment, on the very premises of the employer, and while the deceased was engaged in the fulfillment of the duties of his employment. But this alone is not enough to make the case compensable, for the phrases "out of" and "in the course of" the employment are not synonymous, but are independent of each other; proof of the one does not necessarily establish the other; and the inclusion of both elements in the act makes it obligatory upon the claimant, in meeting his burden of proof, to establish that the injury or death

arose, not only "in the course of" the employment, but also "out of" the employment as well. [Smith v. Levis-Zukoski Merchantile Co., 223 Mo. App. 743, 14 S. W. (2d) 470; Jackson v. Euclid-Pine Investment Co., 223 Mo. App. 805, 22 S. W. (2d) 849; Stone v. Blackmer & Post Pipe Co., 224 Mo. App. 319, 27 S. W. (2d) 459; Metting v. Lehr Construction Co., 225 Mo. App. 1152, 32 S. W. (2d) 121.]

The phrase "out of" the employment refers primarily to the origin or cause of the accident. In attempting to announce somewhat of a general rule which would be applicable in a fashion to all cases, the courts say that an injury arises "out of" the employment when it is reasonably apparent, upon a consideration of all the facts and circumstances, that a causal connection exists between the conditions under which the employee's work is required to be done and the resulting injury. The risk may be either an ordinary or an extraordinary one, so long as it bears a definite relation to the employment; it may originate either from within or from without the employment, if only the exposure to the risk is peculiar to the employment; and the particular act, in the doing of which the injury follows, may even be ancillary to the employment proper, so long as it tends ultimately to react to the benefit of the employer. In other words, it is enough for the injury to be held to arise "out of" the employment if it is a natural and reasonable incident thereof, even though not foreseen or anticipated; but in all events it must be the rational consequence of some hazard connected with the duties which the employee is called upon to perform. [Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128; Cassidy v. Eternit, Inc., 326 Mo. 342, 32 S. W. (2d) 75; Smith v. Levis-Zukoski Merchantile Co., supra; Hager v. Pulitzer Publishing Co. (Mo. App.), 17 S. W. (2d) 578; Jackson v. Euclid-Pine Investment Co., supra; Bise v. Tarlton (Mo. App.), 35 S. W. (2d) 993; Metting v. Lehr Construction Co., supra.]

Indeed, it has been wisely said that there is no justification, in the practical application of the act, for investing the words "arising out of and in the course of the employment" with a technical meaning; that they are plain, ordinary, and everyday words, and therefore should be given their plain, usual, and ordinary meaning; and that every case involving their application with regard to the right to compensation, where a causal connection is sought to be made between the act and the injury, should of necessity be decided upon its own peculiar facts and circumstances. [Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601; Sawtell v. Stern Brothers & Co., 226 Mo. App. 485, 44 S. W. (2d) 264.]

Though this case is by no means free from difficulties, we cannot escape the conclusion that the death of the deceased is fairly traceable to his employment. The commission so found upon the facts before it; and in determining the propriety of the award so ren-

dered, we must look to the evidence most favorable to support the finding, and must accord the claimant, as the prevailing party, the benefit of the fair and legitimate inferences to be drawn from all the evidence. [Betz v. Columbia Telephone Co., 224 Mo. App. 1004, 24 S. W. (2d) 224; Smith v. Levis-Zukoski Mercantile Co., supra; Huelsmann v. Stute & Co. (Mo. App.), 28 S. W. (2d) 387; Bise v. Tarlton, supra; Travelers' Insurance Co. v. Davis (Mo. App.), 42 S. W. (2d) 945.]

Now the commission found only that the deceased was employed as a salesman for the company, but that is by no means all there is in the record to identify his status. We have already mentioned the fact that he was an officer and stockholder of the company, and beyond this it was shown that he was the manager of the company. This latter fact appears both from the police report of the occurrence and from the transcript of the coroner's inquest, both of which were introduced in evidence and relied upon by appellants, and for the truth and accuracy of which they must thereafter be held to vouch. Furthermore, the father of the deceased, when asked the capacity in which his son was employed, testified: "Practically all around; doing anything that he could to help it along."

Thus it is to be seen that the deceased was far more than a mere salesman for the company, and, in fact, that his duties were coextensive with the operation of the business; and it is reasonably to be inferred that his obligations to the company were commensurate with the responsibilities which the general character of his employment entailed upon him.

Viewing his status in that light, it would seem to us logically to follow that the protection and preservation of the company's property was incidental to his employment. Ordinarily the scope of that duty would not have led to resistance to armed robbers, but when such peril to the property presented itself, how can we say that the deceased, in offering resistance to the robbers, was acting the less within the legitimate scope of his employment than if he had merely been securing and protecting the property against loss from any other cause?

An element inherent in the duty of protecting property is that there may be some degree of violence encountered. Those who are required to deal with lawless persons may themselves be met with lawlessness in return. When a special duty arises in such a case, then a corresponding risk of personal violence arises, and the duty and risk become correlative. The precise form which the risk may take is not of so much consequence, nor is its unexpectedness and gravity to be made the test.

If the deceased had been employed as a watchman or guard, with the primary duty of defending the employer's property against those with criminal designs upon it, we venture the opinion that the right

of his dependents to compensation would not be questioned. But was not the same duty in a sense incidental to the employment of an officer and manager of the company? And in the event of robbery, did not the fact and nature of his employment mark the deceased as a special victim?

In other words, the danger to be apprehended from robbers was peculiar and special to the status of the deceased over and above that which was common to the neighborhood at large. By this we mean that the risk to which he was exposed by reason of his employment was of greater degree than if he had not been so employed. A customer or bystander, or even an ordinary employee, who might have chanced to have been present in the store at the time of the robbery, might indeed have been injured or killed as a consequence thereof, but the risk would certainly not have been so great as in the case of one who occupied the general and peculiar status of the deceased.

The designs of the robbers were not against the deceased personally, but against his employer's property. It was not his own possessions which he was attempting to protect, but the property of his employer. The act of resisting the robbers was reasonably related to the general service which the deceased was employed to render, and it was undertaken by him in good faith in furtherance of the employer's business. The risk was not in all events an anticipated one; the act of the deceased was doubtless rash and foolhardy; but now that his death has followed, it appears under all the circumstances of the case to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. We rule therefore that there is sufficient competent evidence in the record to warrant the finding that the death was by accident arising out of and in the course of the employment, and that the award must stand if there is one to whom the compensation may properly go. [In re Reithel, 222 Mass. 163, 109 N. E. 951; Ex parte Terry, 211 Ala. 418, 100 So. 768; Dean v. Stockham Pipe & Fittings Co., 220 Ala. 25, 123 So. 225; Hellman v. Manning Sand Paper Co., 176 App. Div. 127, 162 N. Y. Supp. 335; Mechanics' Furniture Co. v. Industrial Board, 281 Ill. 530, 117 N. E. 986; Maher v. Duluth Yellow Cab Co., 172 Minn. 439, 215 N. W. 678; Munro v. Williams, 94 Conn. 377, 109 Atl. 129.

This brings us therefore to a consideration of the last point made for our review, which is that there is not sufficient competent evidence in the record to sustain the commission's finding that the claimant was dependent upon the deceased.

The record shows that the deceased was twenty-nine years of age at the time of his death; that he was unmarried; and that he lived at home with his mother at 3603 Cass Avenue, in the city of St.

Louis. The father, the mother, and the deceased constituted the entire family.

The deceased regularly contributed the sum of fifteen dollars a week to his mother, which went into the general budget to help maintain the home, and on frequent occasions he also bought fruits and vegetables for the family table. Somtimes when he had a surplus of cash on hand, as when his dogs would win prizes at dog shows, he would make an extra donation to his mother, or buy articles of clothing for her. Out of such donations the mother furnished board and lodging to the deceased; did his washing, ironing, and mending; and supplied food for his dogs.

The father testified that the tire business had been very unprofitable, and that his concern had lost money, for the last six years; and that he had been able to draw only a small salary from the company. He endeavored to contribute the same amount as did the deceased towards the maintenance of the household, but sometimes the state of his finances would not permit him to make his regular contributions.

The mother testified that she was absolutely dependent upon her son's contributions; that she had no income from any source other than her husband's earnings; and that since the death of her son, she had taken two boarders into her home.

The commission found, with one member dissenting, that the mother had been a partial dependent upon the deceased, and fixed her compensation at the amount which has been heretofore indicated.

The act itself defines a dependent as a relative of the deceased by blood or marriage, who was actually dependent for support, in whole or in part, upon his wages at the time of the injury. [Sec. 3319 (d), R. S. 1929.] Furthermore, as our act is written, it is the dependency of the claimant, and not his financial injury, which is the test of his right to compensation.

If the claimant in this case may be said to have established her status as a partial dependent, there is no question about the propriety of the amount of the award. We think, from the facts as we have stated them, that there is sufficient competent evidence in the record to warrant the finding of the commission that she was a partial dependent, and that such finding is in full accord with the terms and intent of the statute and the several cases construing it. [Clingan v. Carthage Ice & Cold Storage Co., 223 Mo. App. 1064, 25 S. W. (2d) 1084; Schmelzle v. Ste. Genevieve Lime & Quarry Co. (Mo. App.), 37 S. W. (2d) 482; Travelers' Insurance Co. v. Davis, supra; Cunningham v. Management & Engineering Corporation, 226 Mo. App. 215, 45 S. W. (2d) 899.]

It follows that the judgment of the circuit court affirming the final award of the commission should in turn be affirmed by this court; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.