MARY BEEM v. H. D. LEE MERCANTILE COMPANY, Employer, and EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Insurer, Appellants.—85 S. W. (2d) 441.

Division One, July 9, 1935.*

*NOTE: Opinion filed at September Term, 1934, April 17, 1935; motion for rehearing filed; motion overruled at May Term, July 9, 1935.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, John N. Monteith* and *Dean Wood* for appellants.

*W. H. Hargus, W. M. Anderson* and *Joseph Koralchik* for respondent.

STURGIS, C.—This case originated before the Workmen's Compensation Commission of this State wherein claimant, Mary Beem, widow of W. D. Beem, deceased, filed her claim for compensation under the Workmen's Compensation Law of this State against defendants as employer and insurer for compensation for the death of her husband by an accident arising out of and in the course of his employment. The parties so framed the issues that the litigated question was whether or not the deceased's death was an "accident arising out of and in the course of his employment." The defendant mercantile company, who with its insurer contested the claim, is a wholesale grocery house and claimant's husband, the deceased, when he met his death, was a traveling salesman in its employ. The Workmen's Compensation Commission, on the evidence adduced, found that the death of claimant's husband was due to an accident which arose out of and in the course of his employment and awarded claimant compensation in the total amount of $10,534.

The accident occurred in Cass County and an appeal was taken by defendants to the circuit court of that county, which, on

review, approved the finding and award of the commission and entered judgment accordingly. The defendants have appealed the case here and insist that the evidence, taken most favorable for the claimant, does not support the judgment of the trial court affirming the finding of the Compensation Commission that the death of claimant's husband, W. D Beem, arose out of and in the course of his employment. The question of whether the facts found by the commission support the award and whether there was sufficient competent evidence in the record to warrant the making of the award are questions of law reviewable by the circuit court and by this court. [Sec. 3342, R. S. 1929.]

There is no dispute that claimant's husband at the time of his death was a traveling salesman in defendant's employ. His home and headquarters were at Harrisonville, Missouri, and his trade territory was around that city, including the town of Pleasant Hill, about twelve miles distant. He did his traveling by automobile. On the morning of Friday, March 10, 1933, he was found dead in his automobile near the highway leading from Pleasant Hill to Harrisonville, but nearer to Harrisonville, and the tracks of his car showed he had been traveling in that direction. He had been dead several hours when found with a bullet hole through his head and he and the car seat covered with blood. He had been in Pleasant Hill the evening of Thursday, March 9, and left there after midnight obstensibly to return to his home at Harrisonville. This was his usual route. He had some money of his own and some that he had collected for his employer and it is conceded that he was likely shot and killed on his road home from Pleasant Hill for the purpose of and to accomplish a robbery by some person never apprehended.

Without going into detail, the evidence shows that the deceased, W. D. Beem, pursued his work and conducted the business of traveling salesman for his employer in the usual manner of traveling salesmen in rural districts. He had a route sheet covering a week's work showing what towns or country stores he would make each day, on an average of five or six a day, so that his employer would know where to reach him by phone or letter on any particular day. He was supposed to follow this route and be at each town at the time designated as near as practical, but the details were largely in his discretion and governed somewhat by circumstances. His hours of work were largely in his discretion, sometimes short and often running into the night. He tried to be at his proper starting point every morning and visit the towns listed on that day. He was required as far as practical to send in his orders and remit his collections every day and Pleasant Hill was a convenient point to do this on Thursday evening. Also his mother-in-law lived there and when convenient he took his evening meal with her. He arrived at Pleasant Hill on the evening of Thursday, March 9, called on some

of his customers there, had evening dinner with his mother-in-law, made up his orders and reports and mailed same out at about nine-thirty P. M.

As we understand defendants' contentions, they concede that the evidence shows that the deceased till about nine-thirty, P. M., March 9, 1933, the night he was killed, was engaged in work arising out of and in the course of his employment as a traveling salesman, and that, had he at once and without stepping aside to engage in something not arising out of and in the course of his employment, started for Harrisonville, his traveling home to Harrisonville that night would be so included and the accident which happened to him causing his death in so doing would be compensable. What defendants claim, and the facts so show, is that after the deceased performed the last service for his employer at Pleasant Hill in mailing out his report and orders taken to his employer at nine-thirty P. M., he then stepped aside from any service for or performance of any duty to his employer by going to an all-night restaurant in Pleasant Hill, not to sell goods for his employer to any present or prospective customer, but purely for his own pleasure, and there engaged in playing cards with some companions purely for his own amusement or pastime till about twelve-thirty A. M.; and defendants further claim that the deceased did not again take up or resume his employment or work incident thereto before his death, notwithstanding the fact that after the three hours spent in his own pleasure in playing cards at Pleasant Hill he took up and resumed his regular line of service and routine employment in driving his automobile to Harrisonville over the regular and proper route and in so doing met with this fatal accident.

We think that appellants' learned counsel concede that the word "employment," when applied to a traveling salesman, includes both traveling from place to place and selling goods; and that an accidental injury or death arising out of and in the course of his employment covers both the time and place of the traveling as well as the selling of goods. This is the construction placed on our statute, following the construction placed on similar statutes by other courts, by this court in Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128, and that ruling has been steadily adhered to. [Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S. W. (2d) 713; Schulte v. Grand Union Tea & Coffee Co. (Mo. App.), 43 S. W. (2d) 832; Duggan v. Toombs-Fay Sash & Door Co. (Mo. App.), 66 S. W. (2d) 973.] The Wahlig case involved the question of whether a traveling salesman, who was injured by a train at a railroad crossing while he was traveling in his automobile going to see a customer in order to sell him goods, suffered injury from an accident arising out of and in the course of his employment. This court so held and said: "The courts of Great Britain and a large

majority of our sister states have consistently held that street accidents may arise out of and in the course of one's employment. The following quotations are very illuminating on this question: 'If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risks incidental to the streets, the accident arises out of as well as in the course of his employment.' [Dennis v. White, Ann. Cas. 1917E, l. c. 326.] . . . 'The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer.' [Katz v Kadans & Co., 232 N. Y. l. c. 421, 134 N. E. 330, 331, 23 A. L. R. 401.] . . . 'It is a well-established rule of law in compensation cases, that when an employee, in the performance of his duties as a traveling salesman, is required to use the streets of a city (or public roads of the country), such streets become his place of work, and the hazard incident to travel thereon, including the dangers of coming in contact with moving street cars, is a danger incident to his employment.' [Capital Paper Co. v. Conner, 81 Ind. App. l. c. 547, 144 N. E. 474, 475.]" And the court there further said: "It is our conclusion that the duties of Wahlig's employment necessarily exposed him to the danger of having his automobile struck by a train while traveling in his automobile on and along public streets and thoroughfares, and that the injuries which resulted in his death were the direct and natural result of a risk reasonably incident to his employment." This ruling is certainly in accordance with the statutory definition of employment in Section 3305, Revised Statutes 1929, subclause c, reading: "Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen except while engaged in, or about the premises where their duties are being performed, *or where their services required their presence as a part of such services.*"

The appealing defendants rely on what we may term an exception to the general rule of liability imposed by the Compensation Act, which they state thus: "Deceased had abandoned his employment for his own personal pleasure prior to his death and at the time of his death had not yet resumed his employment and therefore his death was not caused by an accident arising out of and in the course of his employment." We agree to this statement of the law but we do not agree that it is applicable to the facts found by the Compensation Commission and as disclosed by this record. Appellants argue that the deceased finished his work for his employer at Pleasant Hill when he made up and mailed his day's report and the orders taken to his employer at about nine-thirty P. M., and that his

employment ended for the time being as shown by the fact that deceased then went to a restaurant for the sole purpose of and engaged in the purely personal pleasure of playing cards with his friends. We may grant that had the deceased met with this accident while so engaged, the principle invoked by appellants would apply and the accident in question could not be said to have arisen out of and in the course of *his employment*. There are a number of cases holding that when an employee abandons or steps aside from his employment and duties connected therewith and engages in work or pleasure purely his own, and while so engaged receives accidental injuries, his employer is not liable because the accident does not arise out of and in the course of the employee's employment. The cases most relied on by appellants on this proposition are Duggan v. Toombs-Fay Sash & Door Co. (Mo. App.), 66 S. W. (2d) 973; Southern Casualty Co. v. Ehlers (Tex. App.), 14 S. W. (2d) 111; American Casualty Co. v. McDonald (Tenn.), 57 S. W. (2d) 795.

The facts here, however, are that deceased finished his purely personal pleasure of playing cards at about twelve-thirty A. M., and then did exactly what defendants insist that he should have done at nine-thirty P. M., that is, drive his automobile over the highway from Pleasant Hill to Harrisonville. Had the deceased on finishing his work for his employer at Pleasant Hill at nine-thirty P. M., promptly commenced traveling in his automobile to Harrisonville over this same usual route, there to stay over night and resume his traveling and selling goods the next morning, as was his custom and intention, and had met with this same accident at the place it occurred (though at an earlier hour of the night), we do not believe that defendants would contend that such accident did not arise out of and in the course of his employment. Certainly they could not successfully so contend under the repeated court rulings. [Schulte v. Grand Union Tea & Coffee Co. (Mo. App.), 43 S. W. (2d) 832; Sawtell v. Stern Bros. & Co. (Mo. App.), 44 S. W. (2d) 264; Webb v. Northside Amusement Co. (Pa.), 147 Atl. 846; Rachels v. Pepoon (N. J.), 135 Atl. 684, 139 Atl. 923; Meyer v. Royalton Oil Co. (Minn.), 208 N. W. 645; Anderson v. Nagel, 214 Mo. App. 134, 259 S. W. 858, 861.] These cases hold that, although a traveling salesman or like employee abandons his employment for a time for work or pleasure of his own, yet if he resumes his employment and is thereafter injured by an accident while pursuing such resumed employment, the accident is one arising out of and in the course of his employment. The Schulte case, supra, is in point and the commission there found from the evidence that the salesman "deviated from his employment" about five o'clock in the afternoon and spent the time from then till eight o'clock that night "at the home of Julia Brown to serve a purpose of his own and not that of his employer," but that "when he left the home of Julia Brown about eight o'clock

at night in the employer's truck, taking the route which was the logical route'' to the place where he usually and properly kept his truck for the night, ''it is our opinion he was in the scope of his employment.'' It was while the salesman was going from the place of his amusement to his garage and home that the accident causing his injury occurred. The court there held that the evidence and reasonable inference therefrom ''warrant the finding that, at the time the accident occurred, Schulte's *deviation from his employer's business had ended* (Vanneman v. Laundry Co., 166 Mo. App. 685, 150 S. W. 1128; Anderson v. Nagel, 214 Mo. App. 134, 259 S. W. 858), and that he at that time was driving his motor truck to the garage and was performing an act of service for his employer, and that the accident arose out of and in the course of the employment.'' In American Casualty Co. v. McDonald (Tenn.), 57 S. W. (2d) 795, cited by appellants, the court said: ''Counsel also refer us to Railway Express Agency v. Lewis, 156 Va. 800, 159 S. E. 188, 76 A. L. R. 350, and Stratton v. Interstate Fruit Co., 47 S. D. 452, 199 N. W. 117, and like cases, as sustaining the award made herein.

''In each of those cases the employee, on his employer's trip, deviated from the natural route to go on a personal errand, but *the accident happened after the personal errand was accomplished* and the employee had started back to the place where he was to perform some service or work for the employer. The cases reasoned that although there was a departure, the employee had resumed the employer's service at the time of the accident.''

If the traveling from town to town for the purpose of selling the employer's goods is as much within the employment of a traveling salesman as the selling of goods at such towns, and we think it is, then a return to and resumption of the regular and necessary traveling after an interruption and departure from the employment for pleasure or work purely personal was ended, is as much a return to and resumption of the employment as would be a return to and resumption of the selling of the employer's goods. Under the facts here, the fact of the deceased having engaged in playing cards for his own pleasure at the restaurant in Pleasant Hill for some three hours before resuming his usual travel to Harrisonville, had no other effect on the course of his employment than that he was at the place of the accident some three hours later than if he had not made such diversion. There are cases holding that a casual and in consequential engagement in personal pleasure or work does not even make a break in the continuity of the employment (Consolidated Underwriters v. Breedlove (Tex.), 265 S. W. 128; Sawtell v. Stern Bros. & Co., supra); and that the fact that such diversion causes the salesman or other employee to be traveling on a different street or road, at least when not extra hazardous, does not defeat com-

pensation, provided he is at the time of the accident performing or going to the place of performing some service of the employer. But such questions are not involved here. Going from Pleasant Hill to Harrisonville in his automobile over this road the night of his death was part of and in the course of deceased's employment.

The case of Duggan v. Toombs-Fay Sash & Door Co. (Mo. App.), 66 S. W. (2d) 973, is relied on by appellants as holding the contrary. There a traveling salesman while at home on Sunday went to a mail box to mail some post cards to customers he intended calling on during the week. After mailing such post cards at a mail box he went to visit a friend and after spending some time in a purely social visit he and his wife took a sort of joy ride, picking up their son and finally reaching home. It was on this joy ride that the accident happened. The writer of that opinion said: "On this particular day he used the car (automobile) to post the cards. There can be no question but that posting the cards was in the course of his employment. And if he had returned directly home from the mail box and had received the injury on his direct return home, there would be no question in the writer's mind but that he would be entitled to compensation, because his going and returning from mailing the cards would be some acts incident to his employment. But he did not return directly home from the mail box. Immediately after mailing the cards he commenced to use the car for his own pleasure. . . . It could not well be contended that, if he had gone to Lebanon to visit friends and to engage in a bridge game, that he would have been doing anything incident to his employer's business, and, if he had been hurt while at Lebanon, or in going to Lebanon, that his employer was liable. We think it is equally as certain that, if he had been hurt on returning from Lebanon, his employer would not be liable for his injury, for his return trip from Lebanon to his home could in no sense be considered a part of his return trip from mailing the post cards, even though it occurred before he had returned from mailing the cards.

. . .

"When he decided at the mail box to not return home but to go on a visit for his own pleasure, he at that time appropriated the use of the car for his own pleasure, and that use continued, as we view it, *until he got back home from the pleasure trip*, and the going back home by way of where his son was visiting was a consummation of and a *part of the pleasure trip*, and it was on this pleasure trip that the injury occurred. That is not the case here. In this case the driving from Pleasant Hill to Harrisonville that night was no more a trip purely for the deceased's pleasure than it would have been if made directly after the deceased mailed his orders to his employer at nine-thirty P. M. The diversion for pleasure in playing cards at the restaurant ended before deceased started on that journey.

The same can be said of the Texas case of Southern Casualty Co. v. Ehlers, supra, and in that case the court said: "Had appellee resumed the actual course of his employment after indulging in an hour's personal enjoyment of the dance, and had been thereafter injured while still in the course of that employment, his injury would have been compensable, and the hour's personal indulgence would have been but an immaterial incident of his errand of duty, since the accident did not occur during that hour." The trial court correctly ruled that the accident resulting in deceased's death arose in the course of his employment.

That deceased's death was an accident within the statutory definition of that term is hardly questioned. The statutory definition is (Sec. 3305, R. S. 1929): "The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." Under the evidence here the killing of the deceased makes it an accident under this definition. [Keithley v. Stone & Webster Eng. Corp. (Mo. App.), 49 S. W. (2d) 296; Sweeny v. Sweeny Tire Stores Co. (Mo. App.), 49 S. W. (2d) 205.]

Defendants also contend that such accident did not "arise out of" the deceased's employment, which term signifies a causal connection between the death and the employment. [Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128; Sweeny v. Sweeny Tire Stores Co. (Mo. App.), 49 S. W. (2d) 205, 207.] This means in effect that, leaving out of the case and ignoring the fact of the deceased playing cards at a restaurant for some three hours as being an immaterial incident and proceeding on the theory that deceased, as soon as his work for his employer was finished at Pleasant Hill, at once proceeded on his regular journey to Harrisonville, his next selling point, and that the fatal robbery had happened on that journey, yet defendants would not be liable for want of a sufficient showing that the accident arose out of deceased's employment. This same defense, indeed, if applicable here, would apply if the deceased had been killed for the purpose of robbery while traveling between any other points in his regular route or even while engaged in the actual selling of goods for his employer. Along this line, defendants argue that the motive of the person who killed the deceased may have been revenge or ill-will and not robbery. If that makes any difference, we are bound by the finding of the commission that deceased's death was the result of robbery. Clearly the evidence supports such finding. It is urged, however, that although his death was caused by his assailant's assault in robbing him, it is wholly conjectural whether such assailant was robbing deceased of his own money or that of his employer—whether deceased was re-

sisting the robbery to protect his own money or that of his employer. It is true that it is left largely to conjecture whether the deceased was shot before and in order to accomplish the robbery from his person or was shot while and because of deceased resisting the robber in taking the money from his person or in attempting to regain it. It might be true, as defendants suggest, that the deceased, when confronted by the robber and learning his purpose and intent, tried to make a sudden "get-a-way" and the robber shot him to prevent this. We think such facts are not material here. This is a case of highway robbery pure and simple and the robber was not concerned as to whose money he was getting. Highway robbery is robbery committed on persons using or traveling a public highway and its name indicates that it is a danger incident to, connected with and "arising out of" the use of highways. The assault in this case was on the deceased while using the highway in his employer's business and it matters not whether it was indirectly aimed at the deceased's money or his employer's money. What the court said in Katz v. A. Kadans & Co., 232 N. Y. 420, 134 N. E. 330, where a dairy truck driver was killed on the street in the course of selling and delivering milk by an insane man, is applicable here: "If the work itself involves exposures to perils of the street, strange, unanticipated, and infrequent though they may be, the employee passes along the streets when on his master's occasions under the protection of the statute. This is the rule unequivocally laid down by the House of Lords in England: 'When a workman is sent into the street on his master's business, . . . his employment necessarily involves exposure to the risks of the street, and injury from such a cause necessarily arises out of his employment.' . . . The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer. The street becomes a dangerous place when street brawlers, *highwaymen* . . . are afoot therein as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad. . . . The question is whether the employment exposed the workman to the risks by sending him on to the street, common though such risks were to all on the street." [See, also, the following cases: Industrial Commission v. Hunter, 73 Colo. 226, 214 Pac. 393; Rosmuth v. American Radiator Co., 201 App. Div. 207, 193 N. Y. Supp. 769; Vivier v. Lumbermen's Indemnity Exchange (Tex. Com. App. 1923), 250 S. W. 417; Goodwin v. Bright (N. C.), 163 S. E. 576.]

We do not think the case of Sweeny v. Sweeny Tire Stores Co. (Mo. App.), 49 S. W. (2d) 205, is in conflict herewith. What the court there said as to the robbery resulting in the decedent's death growing out of the protection and preservation by decedent of his

126

employer's property rather than his own property was because that fact alone or to a large extent established in that case the causal connection between the accident and the employment, and such, if proven, would be true here. In the present case, however, the causal connection between the accident and the employment is not dependent on proof that the deceased was at the time protecting or trying to protect his employer's property, but grows out of the fact that his traveling this road at that time was part of and reasonably connected with his employment. The deceased's employment reasonably covered traveling over this road at that time and traveling over the road exposed him to the hazard of highway robbery. That establishes the causal connection.

We hold, therefore, that deceased's death was a compensable accident both arising out of and in the course of his employment by the defendant and affirm the judgment of the trial court. It is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.