## QUIRK v. NEW YORK, C. & ST. L. R. CO.

### No. 10334.

United States Court of Appeals
Seventh Circuit.

Argued May 18, 1951.

Decided May 25, 1951.

Paul M. Butler, Roland Obenchain, Jr., South Bend, Ind., Earl W. Shoemaker, Toledo, Ohio, for appellant.

Russell P. Harker, Frankfort, Ind., George N. Beamer, South Bend, Ind., for appellee. W. F. West, Cleveland, Ohio, Crumpacker, May, Beamer, Levy & Searer, Levy & Searer, South Bend, Ind., Harker & Irwin, Frankfort, Ind., of counsel.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 59, to recover damages for the death of plaintiff's decedent. The cause was submitted to a jury, which returned a verdict in favor of the plaintiff. During the course of the trial, defendant at appropriate times moved to dismiss the complaint for lack of jurisdiction. Such motions were denied by the court, with reservation. Subsequent to the jury verdict, defendant moved to set aside the verdict and to dismiss the action. This motion was allowed by the court's order of November 28, 1950, and it is from this order the appeal comes to this court.

The sole contested issue here is whether decedent at the time of the accident which resulted in his death was engaged in interstate commerce, and this issue depends upon whether at that time the decedent was engaged in his employment with the defendant. Obviously, the court's jurisdiction is dependent upon the solution of this issue. In this connection, plaintiff contends that the issue was one of fact and was settled by the jury's verdict. The court below, however, in dismissing the action held as a matter of law that the decedent at the time of the accident was not engaged in his employment so as to be entitled to the protection of the Act. 45 U.S.C.A. § 51 et seq. All the testimony (aside from certain stipulated facts) relative to this issue was offered by the plaintiff. There is no dispute as to any material fact, and we agree with the court below that the question for decision is one of law.

Defendant operated an interstate line of railroad through Muncie and Tipton, Indiana. It also operated an intrastate line between Michigan City, Indiana, and Indianapolis, Indiana, which crossed the interstate line at Tipton and passed through Sharpsville, Indiana. Decedent worked during a part of the day of his injury at Muncie, Indiana, on the interstate line but his injury occurred upon the intrastate line.[1]

Decedent was a general foreman for defendant with supervision over track construction and maintenance, including operation of work trains. His headquarters were at Tipton but he lived at Sharpsville, six miles distant from Tipton. He had been furnished a one-man motor car by defendant for use in traveling over his work territory, which he also used, without objection on the part of defendant, in going between his home at Sharpsville and his headquarters at Tipton. Several days prior to, and including November 5, 1948, the day of his injury, he had been assigned to and engaged in the operation of a work train and three gangs of men at Muncie on a job, the completion of which required several more days. Decedent had instructions from his superior to stay with the work train. His duty required his presence so as to get the train out in the morning and put it away at night. Decedent spent the two nights previous to the day of his injury at his home in Sharpsville. This was not known to the defendant, although the decedent had previously under similar circumstances and with defendant's knowledge returned to his home for the night, apparently with no objection by the defendant. There is no evidence as to what form of conveyance decedent used going to Muncie on the day of his injury; however, it is shown that the gang working with the train at Muncie, over which decedent had supervision, was conveyed by defendant's truck from Tipton to Muncie. Also under decedent's supervision at Muncie was the Cammack gang, which arrived at Muncie previous to the Tipton gang. Decedent had been assigned to Muncie for the day following his injury, and it was his duty to be on hand prior to the arrival of the gang from Tipton. Decedent could have remained at Muncie at the expense of the defendant.

On November 5, 1948, the work at Muncie was suspended before the usual time on account of the weather. After the gang

1. The fact that the accident occurred on defendant's intrastate line is without significance, particularly in view of the 1939 amendment to the Act.

had quit work, decedent, without notifying his superior, left Muncie about 3:10 p.m., bound for his home in Sharpsville, so that he might see a basketball game in which his son was to participate. He rode from Muncie to Tipton, a distance of forty-two miles, by automobile owned and operated by a fellow employee. It was stipulated "that defendant did not furnish to plaintiff's decedent said automobile in which he rode from Muncie, Indiana, to Tipton, Indiana, and that said automobile was not owned, or operated, by defendant." At Tipton, decedent found that the motor car commonly used by him had been taken by one Collins, also an employee of the defendant. Decedent, some two hours after he had left Muncie, took another motor car, which had not previously been used by him, and started from Tipton for Sharpsville. On this journey, the motor car driven by the decedent and the one driven by Collins collided, from which collision the decedent sustained injuries resulting in his death.

Admittedly, decedent was an employee engaged in interstate commerce up until the time he quit work at Muncie. Whether such relation existed at the time of his fatal injury is our question. When an employment relation once established ceases to exist presents a perplexing question, as is evidenced by the numerous cases wherein the question has been considered. The principles to be applied have often been stated but the difficulty is making their application to the facts of a particular case.

In New York Central & Hudson River Railroad Co. v. Carr, 238 U.S. 260, 263, 35 S.Ct. 780, 781, 59 L.Ed. 1298, the court stated: "If he is hurt in the course of his employment while going to a car to perform an interstate duty, or if he is injured while preparing an engine for an interstate trip, he is entitled to the benefits of the Federal act, although the accident occurred prior to the actual coupling of the engine to the interstate cars." And on the same page: "Each case must be decided in the light of the particular facts with a view of determining whether, at the time of the injury, the employee is engaged in interstate business, or in an act which is so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof."

A case often cited and relied upon is that of Erie Railroad Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057. In that case, the Supreme Court reversed the lower court which had held that the employee was not engaged in interstate commerce at the time of his injury. Concerning the facts, the court stated, 244 U.S. at page 171, 37 S. Ct. at page 356, 61 L.Ed. 1057: "In concluding his work for that day the employee took his engine to the place where it was to remain for the night and started to leave the yard. His route lay across some of the tracks, and while passing over one he was struck by an engine and received injuries from which he soon died." The court in deciding the issue against the railroad stated, 244 U.S. at page 173, 37 S.Ct. at page 557, 61 L.Ed. 1057: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. [Citing case.] Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of one part than of another."

In Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, the court considered a similar question involved in a state workmen's compensation act. There, the employee was struck by a train and killed on tracks immediately adjacent to the premises where the decedent was employed. In holding that the employment relation existed, the reasoning is pertinent. The court stated, 276 U.S. at page 158, 48 S.Ct. at page 222, 72 L.Ed. 507: "And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. * * * In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached. Probably, as a general rule, employment may be said to begin when the employee reaches the entrance to the employer's premises where the work is to be done; but it is clear that in some

cases the rule extends to include adjacent premises used by the employee as a means of ingress and egress with the express or implied consent of the employer."

In Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327, the District Court set aside a jury verdict and entered a judgment for the defendant, as was done in the instant case. The Court of Appeals reversed (one judge dissenting) and held that the plaintiff was injured while engaged in interstate commerce. There, the plaintiff, member of a railroad gang, together with his fellow employees, quit work at 4 p.m. (thirty minutes prior to the scheduled quitting time) so that they might return tools to a tool house, some distance from the point where they had been working. Plaintiff himself had no tools but he accompanied the other men toward the tool house, which was also in the direction of his home. While walking to the tool house, the plaintiff was struck by defendant's train and injured. The court held that the plaintiff was entitled to the protection of the Act.

A case where the facts are somewhat similar to those of the instant case is Sassaman v. Pennsylvania R. Co., 3 Cir., 144 F.2d 950. There, the plaintiff left his place of employment and within four minutes boarded defendant's passenger train, as was his custom (riding upon a pass furnished by the defendant), to return to his home some nine miles away. Plaintiff was injured while alighting from the train because of the defective condition of the platform. The Court of Appeals (one judge dissenting) sustained a finding by the lower court that the plaintiff at the time of his injury was not functioning within the scope of his employment. It was argued there, as it is here, that the plaintiff at the time of receiving his injuries, at page 952 of 144 F. 2d "was still upon the defendant's premises consequent upon and incident to his taking leave of his place of employment in order to return home". The court rejected the argument and, after reviewing numerous cases, stated 144 F.2d at page 953: "In short, the condition which makes possible a

claim for injuries suffered as in the course of employment but which are actually received on premises away from the employee's place of employment is the fact that the employee must, of necessity, traverse such other premises in order to reach or depart from the place of the discharge of his duties. In such circumstances, he is upon the adjacent or other premises, as a requisite of his employment, either with the knowledge and consent or the approval of his employer, at the least, legally implied from the knowable situation."

Applying the principles of these cases and others which could be cited, it is hardly open to question but that decedent's employment relationship ceased at the time he departed from Muncie in a privately owned automobile. When his work was completed on that day, he had the option of remaining in Muncie at the defendant's expense or making the trip to Sharpsville for the night.[2] He chose the latter course. Certainly it cannot be thought that this action of the decedent was for the purpose of discharging any duty incident to or in connection with his employment. When he left Muncie, he was engaged solely in a personal activity unrelated to his duties as an employee of the defendant.

Even so, we still have the question as to the decedent's status after he arrived at Tipton and commenced the journey from there to his home, during which the unfortunate accident took place. It is argued by the plaintiff that even though there was a deviation from the scope of his employment during the trip from Muncie to Tipton, it was only temporary, and that his status as an employee was reestablished at Tipton.

Cases cited in support of this theory are readily distinguishable. In General Accident, Fire & Life Assurance Corp., Ltd. v. Prescott, 80 Ga.App. 421, 56 S.E.2d 137, page 138, the court stated:

" 'Where an employee breaks the continuity of his employment for purposes of his own and is injured before he brings him-

---

**2.** This statement does not take into account decedent's instructions to remain in Muncie, which he had on previous oc-casions ignored, without complaint from the defendant.

 

self back into the line of his employment, the injury does not arise "out of and in the course of" his employment, * * * but where the personal mission has been accomplished and the employee is once more engaged in the duties of his employment * * * the injury arises "out of and in the course of" the employment.' "

Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S.W.2d 441, 100 A.L.R. 1044, announces a similar rule. Pertinent is the statement, at page 444 of 85 S.W.2d: "These cases hold that, although a traveling salesman or like employee abandons his employment for a time for work or pleasure of his own, yet if he resumes his employment and is thereafter injured by an accident while pursuing such resumed employment, the accident is one arising out of and in the course of his employment. * * * In each of those cases the employee, on his employer's trip, deviated from the natural route to go on a personal errand, but the accident happened after the personal errand was accomplished and the employee had started back to the place where he was to perform some service or work for the employer. The cases reasoned that although there was a departure, the employee had resumed the employer's service at the time of the accident." Other cases relied upon by the plaintiff which announce the same rule are Maryland Casualty Co. v. Levine, 5 Cir., 67 F.2d 816, and Rogers v. Davis, 39 Idaho 209, 228 P. 330.

These cases do two things, neither of which is helpful to the plaintiff: (1) furnish additional support for our view that the decedent was not acting in the course of his employment on his trip from Muncie to Tipton, and (2) merely pose the question as to whether at the latter point the decedent returned to his work so as to reestablish the employment relationship which had previously been terminated.

We think the question must be answered adversely to plaintiff's contention. Certainly the decedent's ill-fated trip from Tipton to his home in Sharpsville was for his own personal purpose and convenience the same as that from Muncie to Tipton. It was only a continuation of the same engagement, without any alteration of motive or purpose. The fact that he was permitted to utilize defendant's motor car as he had done in the past and that it was operated upon defendant's tracks has no tendency to reestablish the relationship which the decedent by his voluntary act had previously severed.

We are not unmindful of the liberal interpretation which the courts have placed, and properly so, upon the Federal Employers' Liability Act, designed for the benefit and protection of railroad employees but, even so, there is a point beyond which its application must be denied. Plaintiff's position in the instant case, if accepted, would come close to stripping it of any limitation.

It is our conclusion that the District Court properly held as a matter of law upon the undisputed facts that the Act was without application and the court without jurisdiction.

The order appealed from is

Affirmed.